**Richard L. DERAMO, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

Civ. A. No. 83–2423.

United States District Court, E.D. Pennsylvania.

March 21, 1985.

Jeffrey L. Pettit, Perrin C. Hamilton, Hepburn, Willcox, Hamilton & Putman, Philadelphia, Pa., for plaintiff.

Hermon M. Wells, John R. Jenchura, Dennis J. Morikawa, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this action plaintiff alleges defendant, Consolidated Rail Corporation (Conrail), improperly terminated his employment. Plaintiff's attack advances on two fronts. First, plaintiff claims his termination was a breach of contract. In support of this theory, plaintiff asserts he was the beneficiary of an implied employment contract, a contract which resulted from plaintiff's relocating to Philadelphia from New York in justifiable reliance upon Conrail's promises of promotion and/or continued employment. Secondly, plaintiff, a man in his mid-50's, contends his termination constituted age discrimination under both state and federal law. Presently before me is Conrail's motion for summary judgment on the breach of contract claim. In its motion, defendant maintains there existed no implied employment contract but even if there was such a contract, recovery for its breach would be barred because plaintiff's exclusive remedy is under the age discrimination statutes. For the reasons that follow, defendant's motion will be refused.

In support of its claim that plaintiff's exclusive remedy is the one available under the age discrimination statutes, defendant has cited an impressive array of cases starting with *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3rd Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1979), and culminating in *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982). This line of authority has been followed almost without question. *See Kamens v. Summit Stainless, Inc.,* 586 F.Supp. 324 (E.D.Pa. 1984); *Watkinson v. Great Atlantic and Pacific Tea Co., Inc.,* 585 F.Supp. 879 (E.D. Pa.1984). Superficially, the holding of these cases appears both clear-cut and supportive of defendant's position. However, when reduced to their most common denominator, it becomes evident that the situation in the case *sub judice* is quite different from that presented in the above cited cases. An analysis of the strict holding in *Bruffett,* the most recent Third Circuit decision, is helpful.

In *Bruffett,* the plaintiff was hired by the defendant as a temporary employee. Later, plaintiff was informed he would be given permanent employment upon "successful completion of both medical and security examinations." *Bruffett,* 692 F.2d at 911. When the required medical exam uncovered that plaintiff faced the significant probability of serious, future medical problems, defendant reneged on its offer of permanent employment, whereupon plaintiff filed suit claiming, *inter alia,* violation of the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, §§ 951 et seq. (Purdon 1964 & Supp.1982) ("PHRA") and "wrongful termination of an at-will contract of employment." *Bruffett v. Warner Communications, Inc.,* 534 F.Supp. 375, 377 (E.D.Pa.), *aff'd,* 692 F.2d 910 (1982). It was the plaintiff's position that to permit employee termination because of a medical handicap would be to permit violations of the "public policy as reflected in the [PHRA]." *Bruffett,* 534 F.Supp. at 378.

In addressing *Bruffett's* public policy argument, the Court of Appeals did not disagree with the existence of the public policy alleged by plaintiff. However, because the PHRA was a comprehensive legislative scheme, the court held an aggrieved party must look to the remedies available under the legislation announcing the public policy. In essence, the court recognized the existence of the public policy advanced by plaintiff but held that a judicially created cause of action was not necessary to promote the policy, there being an adequate remedy created by the legislature. Furthermore, allowing a judicially created cause of action to proceed would be to permit an intentional bypass of the legislative remedy for the perceived problem.

*Bruffett* and the cases which came both before and after it refused to expand what has been called a "public poli-

cy" exception to the at-will employment doctrine. Recovery under this exception is recognized as having its roots in tort theories. *See* Pierce, Mann & Roberts, *Employee Termination at Will: A Principled Approach*, 28 Vill.L.Rev. 1, 25–36. To succeed, a plaintiff invoking the public policy exception must show his discharge was not for an employment related reason but rather for a reason violative of public policy. For example, in *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978), the Pennsylvania Superior Court found the plaintiff had stated a claim by alleging his dismissal resulted not from inadequate job performance but because of his performance of jury duty, there being a public policy in favor of jury duty that would be jeopardized if such dismissals were permitted. In the *Bonham* line of cases, however, the "jeopardy" aspect of the public policy exception was lacking because there existed an adequate statutory cause of action. Stated briefly, the "Bonham cases" stand for the proposition that courts will not expand the common law public policy exception to the at-will employment doctrine to promote a public policy already benefitting from statutory protection. Indeed, in *Bruffett*, 692 F.2d 910, *Bonham*, 569 F.2d 187, *Kamers*, 586 F.Supp. 324, and *Watkinson*, 585 F.Supp. 879, the common thread is that the plaintiffs were complaining of discrimination violative of state and federal anti-discrimination statutes.

Turning to the case at bar, it is true that plaintiff, like the plaintiffs in *Bonham* and its progeny, has alleged causes of action grounded in violations of anti-discrimination legislation and breach of contract. However, in contrast to *Bonham*, Mr. DeRamo's allegations of age discrimination are independent of the allegations for his breach of contract claim. In other words, Mr. DeRamo is not asserting a violation of public policy as the sole source of both a tort exception and an implied-comtract exception to the at-will, employment doctrine. To the contrary, Mr. DeRamo's breach of contract claim is based on his detrimental reliance upon representations made by defendants. The detrimental reliance-breach-of-implied-contract theory has been accepted by the Pennsylvania courts. *See, O'Neill v. ARA Services, Inc.*, 457 F.Supp. 182 (E.D.Pa.1978). Furthermore, commentators have recognized the public policy *tort* exception as being separate and distinct from the detrimental reliance-breach of *contract* exception. *See*, Peirce, Mann & Roberts, *Employee Termination At Will: A Principled Approach*, 28 Vill.L. Rev. 1, 19–24. When viewed in this context, the "*Bonham* cases" are inopposite in that those cases deal only with the public policy tort exception. Similarly, unlike the plaintiffs in the *Bonham* line of cases, it is entirely possible for Mr. DeRamo to succeed on his breach of contract claim without proving discrimination. In short, plaintiff's age discrimination claim and his breach of contract claim are factually different.

The foregoing result has been implicitly adopted by the Third Circuit Court of Appeals. *See Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 (3d Cir.1984) (Adams, J.). In *Wolk*, Judge Adams, after expressing his view that the *Bonham* court's proclamation of the exclusivity of remedies "appears to have been tactitly rejected by the Pennsylvania Supreme Court in *Fye v. Central Transportation Inc.*, 487 Pa. 137, 140–41, 409 A.2d 2, 4 (1979)," stated that *Bruffett*, which was decided after *Fye*, was "binding precedent". *Wolk*, 728 F.2d at 223–24 & n. 3. Nonetheless, Judge Adams considered the merits of plaintiff's breach of contract claim, apparently viewing it as separate and distinct from plaintiff's breach of public policy claim.

In sum, I find the line of cases starting with *Bonham*, bars only causes of action whose factual underpinnings are grounded exclusively in the public policy tort theory of wrongful discharge. They do not bar recovery for claims grounded in the contract theory, a theory which requires a factual predicate independent of any alleged breach of public policy. Any other view of the law would limit the avenues of relief available to litigants suffering from

both a discriminatory discharge and a contractual breach discharge. Surely this would not be in keeping with the intent of the Pennsylvania legislature in passing the PHRA. *See Bruffett,* 692 F.2d at 920–24 (Gibbons, J. dissenting).

## ORDER

AND NOW, this 19th day of March, 1985, for the reasons expressed in the attached memorandum, defendant's motion for partial summary judgment grounded in the exclusivity of remedies argument is denied. It is further ordered that defendant's other arguments for summary judgment are denied because as to them there exists material issues of fact.