Janet L. SOLA, Appellant,

v.

LAFAYETTE COLLEGE, David W. Ellis and Howard Gallup.

No. 85–1746.

United States Court of Appeals, Third Circuit.

Argued Aug. 6, 1986.

Decided Oct. 28, 1986.

Martricia McLaughlin (argued), McLaughlin & Glazer, Easton, Pa., for appellant.

Matthew R. Sorrentino (argued), Holland, Taylor and Sorrentino, Bethlehem, Pa., for appellee.

Before: SEITZ, ADAMS and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The plaintiff, Janet Sola, appeals the order of the district court granting the motion for summary judgment of the defendants, Lafayette College, its president and

the Chairman of the Pyschology Department, on her claims arising out of a denial of tenure. Jurisdiction in the district court was based on diversity of citizenship. We have jurisdiction under 28 U.S.C. § 1291.

## I.

Janet Sola became an assistant professor of psychology at Lafayette College in 1976. In 1982 Sola applied for tenure at the college.

Tenure decisions at the college are governed by the college's Faculty Handbook and section 70 of the college Statutes. Under the procedures set forth by the personnel manuals, tenure determinations are first made by the Appointments, Promotions and Dismissals Committee (the "AP & D Committee"). After reviewing the record of the tenure candidate, which includes the recommendation of the department chairperson, the AP & D Committee makes a recommendation to the President. If the AP & D Committee's decision is adverse, the candidate may appeal the decision to the President of the college or request that the committee reconsider its recommendation. The President makes a final recommendation to the college's Board of Trustees.

The Faculty Handbook sets forth the following criteria for tenure decisions:

> Appointments and promotions are made on the basis of merit and in consideration of departmental and institutional characteristics. These latter include, but are not restricted to, enrollment trends, the need for a desirable mix of specialties, the tenure guidelines, the principles of Affirmative Action, economic priorities, and other relevant needs.

A major factor in the tenure decision is the recommendation of the department chairperson. Under the guidelines in the Faculty Handbook, the recommendation of the department chairperson is to include "a statement indicating his judgment as to the probable effect of the promotion or award

of tenure to the candidate on other members of the department." At the time that Sola's tenure decision was rendered, the AP & D Committee was bound to a tenure quota in which not more than two-thirds of a department could be tenured faculty members, absent an exceptional "guideline breaking" candidate.

The Chairman of the Psychology Department, Dr. Howard Gallup, recommended that Janet Sola receive tenure. His recommendation, however, was not unqualified. He noted that a male professor, whom he viewed as stronger than Sola, would come up for tenure within the next three years, and that a decision on Sola's application should not jeopardize this professor's candidacy. If Sola had been granted tenure, the Psychology Department would have had the maximum number of tenured professors under the tenure quota.

The AP & D Committee voted preliminarily in favor of granting Sola tenure. The next day, however, the final vote was a tie, which resulted in a denial of tenure under college procedures.[1]

Sola appealed the decision to the President of the college. An Advisory Committee was formed, consisting of three professors, one chosen by the provost, one by Sola, and the third by the other two professors. The Committee expressed its concern that the record did not have sufficient information to substantiate Dr. Gallup's comparison of the two professors and recommended that the tenure decision be reconsidered. After requesting further explanation from Gallup, the President affirmed the judgment of the AP & D Committee denying Sola tenure.

Subsequent to the final tenure decision, Sola filed complaints with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission, claiming that the decision was a result of gender-based discrimination. Both agencies dismissed the complaints as un-

---

1. One member of the AP & D Committee recused himself from the decision as a result of Gallup's comparison of the two professors; the Committee thus only had six voting members rather than its normal seven.

timely. Sola then filed this diversity action in district court, alleging wrongful discharge, breach of contract, and intentional infliction of emotional distress.

The district court granted the defendants' motion for summary judgment. It held that the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. §§ 951 et seq. (Purdon's 1964 & Supp. 1986) [the "PHRA"], preempts a tort action for wrongful discharge based on alleged gender discrimination. Assuming that the Faculty Handbook constituted a contract, the court turned to Sola's contract claims. First, it found that the PHRA also bars a contract action when the claim is based on contractual provisions that provide the employee with the same protections as those contained in the PHRA. The court, however, did not address whether the PHRA is the exclusive remedy when a contract provides greater protections than the statute, finding that this issue was not raised by the plaintiff. Second, the court found no evidence supporting Sola's assertion that the tenure decision violated the procedural protections contained in the personnel manuals. In particular, it rejected her claim that Dr. Gallup's comparison was against college policy. Finally, the district court dismissed the intentional infliction of emotional distress claim because Sola did not allege any outrageous conduct on the part of the college.

Sola appeals the district court's order insofar as it dismisses her wrongful discharge and breach of contract claims. Our review is plenary. We must review the record and ascertain whether, resolving all doubts in favor of the nonmoving party, there are no genuine issues of material fact remaining for trial. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 723, 50 L.Ed.2d 748 (1977).

## II.

Sola does not challenge the district court's decision that a wrongful discharge action based on gender discrimination is preempted by the PHRA. 43 Pa.Stat.Ann. § 962(b) (Purdon's Supp.1986).[2] Rather, she contends that because the tenure quota adopted by the college violates public policy by threatening the principles of academic freedom, the tenure decision comes within the public policy tort of wrongful discharge.

The Pennsylvania courts have recognized a cause of action for wrongful discharge where an employee demonstrates that the termination violates a "clear mandate of public policy." *Geary v. United States,* 456 Pa. 171, 185, 319 A.2d 174, 180 (1974). Noting the reluctance of the courts to give this tort wide-ranging application, we have held that only a discharge in violation of a "significant and recognized public policy" constitutes a claim for wrongful discharge under Pennsylvania law. *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 898 (3d Cir.1983).

■ The cases that have recognized wrongful discharge claims have involved infringements on statutory and constitutional rights. *See, e.g., Novosel, supra* (discharge for refusal to participate in lobbying effort implicates important first amendment rights); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (discharge for serving jury duty infringes on important societal interests). We are not persuaded that Sola's claim of a potential threat to the tenure system rises to the level of the public policy concerns that have been recognized in the previous wrongful discharge cases. In addition, there are significant policy concerns counseling against recognizing Sola's claim. We have expressed our reluctance to interfere with the internal operations of academic institutions absent direction from the

**2.** Section 962(b) provides: "as to acts declared unlawful by section five of this act the procedure herein shall, when invoked, be exclusive and the final determination therein shall ex-clude any other action, civil or criminal, based on the same grievance of the complaint concerned."

legislature. *See, e.g., Kunda v. Muhlenberg College*, 621 F.2d 532, 546–51 (3d Cir. 1980). Adoption of Sola's position would require us to evaluate the wisdom of the college's decision to limit the number of tenured professors on its faculty. Such an evaluation may threaten the college's institutional academic freedom. Thus, the implications of Sola's position may pose a greater threat to academic freedom than does the tenure quota. Accordingly, we find that as a matter of law, the college was entitled to summary judgment on the wrongful discharge claim.

## III.

Sola presents three distinct breach of contract claims on appeal. The defendant has conceded for purposes of summary judgment that the Faculty Handbook and Statutes created a unilateral contract.[3] Consistent with this concession, we will proceed to address Sola's claims. First, she contends that summary judgment was inappropriate because there are material issues of fact as to whether the college followed the procedures set forth in the handbook in rendering the tenure decision. Second, she argues that the district court erred in holding that the PHRA preempts a breach of contract claim based on an equal opportunity provision in the contract. Finally, Sola asserts that the district court erred in refusing to consider the affirmative action provisions of the handbook as providing a separate basis for her breach of contract claim.

## A.

Sola contends that the college's customs and the Faculty Handbook create a unilat-

eral contract right to a full, fair, impartial and substantiated tenure decision.[4] The gravamen of her complaint is that the department chairman's comparison of her and the other professor violated this right.

■ As noted above, the guidelines in the Faculty Handbook explicitly authorize department chairpersons to consider the effect of an affirmative tenure decision on other members of the department. Thus, that Gallup compared Sola with another professor is not in itself a breach of contract. Sola asserts, however, that since the Advisory Committee found that the comparison was unsubstantiated, there was a material issue of fact as to whether there was a breach of contract.

After receiving the recommendation of the Advisory Committee, the President requested and received further explanation of the comparison from Dr. Gallup, and subsequently determined that the AP & D Committee's decision denying tenure should be affirmed. We will not insist on further actions by the college in this regard because we will "not substitute [our] judgment for that of the college with respect to the qualifications of faculty members for promotion and tenure." *Kunda v. Muhlenberg College*, 621 F.2d at 548.

■ Sola also asserts that Gallup's recommendation was in effect a request that the AP & D Committee reserve a tenure slot for the other professor, and that this request violated her right to a full and fair tenure determination. The tenure quota guidelines state that "ordinarily no more than two thirds of the faculty in any department shall hold tenure.... A department may exceed this two-thirds guideline

---

3. Although the parties disagree as to the scope of the college's obligations under the contract, in view of our determinations we find it unnecessary to resolve this conflict.

4. Whether the handbook creates these procedural protections is currently being litigated in the Pennsylvania courts. In *Baker v. Lafayette College*, 350 Pa.Super. 68, 504 A.2d 247 (1986), a faculty member brought an action for the college's refusal to reappoint him, alleging breach of contract and defamation. Although the Superior Court agreed with him that under the handbook the College was obligated to perform the evaluations in good faith, the court rejected his claim because it found that the college fully complied with the handbook's procedures. The Supreme Court of Pennsylvania recently granted the appeal in this case. *See Baker v. Lafayette College*, 350 Pa.Super. 68, 504 A.2d 247 (1986). We will assume *arguendo* that Sola is correct in her assertion that the contract provides certain procedural protections.

if and only if the guideline-breaking candidate is an exceptionally valuable teacher-scholar." Sola argues Gallup's request forced her to prove that she was a "guideline breaking" candidate despite the fact that the department had not reached the tenure limit when her application was considered, and thus it violated the procedures set forth under the tenure quota system.

There is no evidence, however, that the AP & D Committee placed any weight on Dr. Gallup's request that a tenured position be reserved. In fact, the uncontroverted evidence shows that the Committee rejected this recommendation. Therefore, we conclude that there is no factual support for Sola's claim that she was denied the procedural protections of her contract.

### B.

We turn to Sola's contention that the district court erred in holding that she could not bring a gender discrimination claim based on an express contractual provision. Sola argues that the precedents establishing that section 962(b) of the PHRA preempts a claim of wrongful discharge for terminations that violate the statute are not applicable to actions brought under the traditional common law of contracts. Sola's argument is not without merit.

The first time this court addressed the relationship between the PHRA and common law actions, it held that the remedies contained in the statute were the exclusive state remedy for discrimination. *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir.1977). Two years later, however, the Pennsylvania Supreme Court expressed a different view, stating that the legislature, in enacting the PHRA, "provided an election for the complaining person to opt for relief under the provisions of the PHRA or the right to seek redress by other remedies that might be available." *Fye v. Central Transportation Inc.*, 487 Pa. 137, 409 A.2d 2 (1979). Nevertheless, this court has continued to accord much respect to

the administrative procedures established by the Pennsylvania legislature, and has refused to recognize new causes of action designed to further the state's anti-discrimination policies. *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432 (3d Cir.1986); *Wolk v. Saks Fifth Avenue Inc.*, 728 F.2d 221 (3d Cir.1984); *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910 (3d Cir.1982).

Sola contends that these cases do not apply when the employee is proceeding under an established common law action, rather than requesting the court to recognize a new cause of action. In support of this contention she argues that we should adopt the reasoning of the district court in *Deramo v. Consolidated Rail Corp.*, 607 F.Supp. 100 (E.D.Pa.1985). In *Deramo*, the court refused to find the breach of contract claim preempted by the PHRA, explaining that our cases:

> bar only causes of action whose factual underpinnings are grounded exclusively in the public policy tort theory of wrongful discharge. They do not bar recovery for claims grounded in the contract theory, a theory which requires a factual predicate independent of any alleged breach of public policy.

607 F.Supp. at 102. *Deramo*, however, involved a contract claim that was factually distinct from the employee's discrimination claim. In this case, the claim is that the college discriminated against Sola in breach of her employment contract.

We will assume without deciding that Sola is correct in her assertion that the PHRA does not preempt actions based on express contracts. We will further assume without deciding that the handbook's policy statement with regard to equal employment opportunity is sufficient to create a contractual right to be free from gender discrimination.[5] These assumptions, however, do not lead to the conclusion that summary judgment was improper on this claim.

---

**5.** We also find it unnecessary to decide in this case whether the attempt by Sola to invoke the

PHRA renders her contract claim preempted under *Fye*.

■ The record shows no factual support for the claim that Sola's gender played any role in the college's decision. Sola produced no evidence that she was denied tenure in part based on her gender. Rather, she claims that the college created an inhospitable atmosphere for women, that the tenure quota had a disparate impact on women, and that Gallup's preference for the other professor was an outgrowth of the old-boy network. In light of the substantial discovery material negating any reasonable inference of gender discrimination, Sola's allegations alone are insufficient to establish a material issue of fact. The defendants, therefore, were entitled to summary judgment on this claim.

## C.

Finally, we consider whether the district court erred in finding that Sola did not raise the issue of whether the Faculty Handbook provided greater protections against discrimination than those provided in the PHRA. We agree that the complaint does not specifically allege a contract claim based on the statement that "[a]ppointments and promotions are made in conformity with the principles of Equal Opportunity and Affirmative Action." In her brief in opposition to summary judgment, however, Sola did raise the claim, albeit in the context of her wrongful discharge claim, that the denial of tenure violated affirmative action principles. Moreover, at the hearing on summary judgment, Sola's attorney explicitly stated that the college was contractually bound to consider the fact that Sola was a woman.

■ Although the record is not clear on this point, we find that Sola did raise the issue of whether the college breached the contract in failing to consider her gender as a positive factor. Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend the complaint "shall be freely given when justice so requires." Although the trial court has discretion to deny such a motion, this discretion is tempered by the liberal mandate of the rule. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227,

229–30, 9 L.Ed.2d 222 (1962). The district court should have considered the affirmative action claims raised in the brief and at oral argument as a motion to amend the complaint. *See Sherman v. Hallbauer*, 455 F.2d 1236 (5th Cir.1972) (district court should have construed new legal theory raised in plaintiff's memorandum in opposition to summary judgement as a motion to amend complaint). In this case, justice requires that the affirmative action claim be heard. *See id.* at 1242.

Therefore, we conclude that the district court erred in not considering Sola's affirmative action claim. Because the district court did not consider this claim, we express no opinion as to whether Pennsylvania would recognize a breach of contract claim based upon the handbook's statements expressing the college's adherence to affirmative action principles. Accordingly, we will remand for the district court to consider whether Sola's claim is cognizable under Pennsylvania law and for such further proceedings as may be appropriate.

## IV.

The order of the district court granting defendant's summary judgment motion on Sola's claims for wrongful discharge, for breach of contract based on the procedural protections of the handbook, and for breach of contract based on gender discrimination will be affirmed. To the extent the order of the district court granted the defendant's summary judgment motion on Sola's affirmative action claim, it will be vacated and that claim will be remanded to the district court for further proceedings consistent with this opinion.

The court directs that seventy-five percent of the costs be assessed against appellant and twenty-five percent against the appellee.