529 A.2d 571

Consumers Motor Mart, Petitioner v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Joyce M. Parr, Petitioner v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued May 21, 1987, before Judges MACPHAIL and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Michael R. Ford, Gallagher & Ford,* for petitioner/ intervenor, Consumers Motor Mart.

*Gary M. Davis, Davis & Abramovitz,* for petitioner/ intervenor, Joyce M. Parr.

*William R. Fewell, Jr.,* Assistant Chief Counsel, for respondent, Pennsylvania Human Relations Commission.

OPINION BY JUDGE MACPHAIL, July 28, 1987:

Consumers Motor Mart (Employer) petitions for our review of the decision of the Pennsylvania Human Relations Commission (Commission) that Employer impermissibly discriminated against Joyce M. Parr (Complainant) in her employment.[1] We affirm.

---

[1] The Commission found that Employer had violated Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955(a) and Section 5(d) of the Act, 43 P.S. §955(d). The Commission ordered Employer to (1) cease and desist from discriminating on the basis of race, and against persons who participate in any way in the proceedings of the Commission; (2) to pay Complainant a lump sum of $29,186.00 less necessary deductions, plus interest of six percent; (3) to offer Complainant a position as salesperson with equivalent sales territo-

Complainant, a black female, was hired in July, 1981 by Employer as a salesperson. Her duties included selling to automobile dealers, and related businesses, advertising, photographing automobiles, and writing and proofreading advertising copy. Complainant's relationship with her Employers, Mr. & Mrs. Ferrone, was satisfactory until the spring of 1983. Suddenly, in April, 1983, Complainant received two written reprimands and in May, 1983, she received another. The only other salesperson employed by Employer in the spring of 1983,[2] Christine Guthrie, a white woman, received only one written reprimand.[3] In May, 1983, Complainant's sales territory was reduced by approximately fifty percent and reassigned to a part-time white employee. Mr. Ferrone testified that the magazine needed more sales due to increased competition and therefore more salespeople were being hired and territories were being reduced in an effort to more fully cover the magazine's sales area. However, Christine Guthrie's sales territory was not reduced.

On June 3, 1983, Complainant filed a complaint with the Commission alleging racial harassment. Mr. & Mrs. Ferrone were served with the complaint and very shortly thereafter Complainant was discharged. On August 26, 1983, Complainant filed a second complaint alleging retaliatory discharge, and on February 9, 1984,

---

ry to what she had in April of 1983; and, (4) to pay Complainant front pay of $287.84 weekly until Employer made a bona fide offer of reemployment.

[2] Technically, there were three salespeople in the spring of 1983; however, one of them, Ms. Pantone, was the Ferrones' daughter and also served as sales manager. Therefore, for the purpose of comparison, we shall consider Ms. Guthrie and Complainant, only.

[3] Our review of these written reprimands in the record reveals that the three sent to Complainant were substantially longer (one was one and one half pages) than the one sent to Christine Guthrie, which contained three sentences.

she filed a third complaint alleging the Ferrones had impermissibly interfered with her unemployment compensation claim.

A hearing examiner received testimony from the parties for two days and then issued her findings of fact, conclusions of law, and opinion which were adopted in full by the Commission. The hearing examiner concluded that Complainant had proved a *prima facie* case of racial harassment and of retaliatory discharge but had not proved a *prima facie* case of impermissible interference with her unemployment compensation claim. Further, the hearing examiner rejected as pretextual the reasons offered by Employer to justify its conduct.

Employer appeals here the Commission's findings of racial harassment and retaliatory discharge. Specifically, Employer argues that the Commission's findings that it engaged in racial harassment and retaliatory discharge are unsupported by substantial evidence. In addition, Employer argues that Complainant failed to prove that the reasons it offered for its actions were pretext. Complainant has cross-appealed from the Commission's order insofar as it failed to award her counsel fees. On motion of Complainant, the two appeals were consolidated on October 22, 1986.

Preliminarily, we note that in a case such as this, Complainant bears the burden of proving a *prima facie* case. Employer may then rebut the inference of discrimination by producing evidence of a legitimate, non-discriminatory reason for its conduct. If this is done, Complainant must then show, by a preponderance of the evidence, that the reasons offered by Employer to justify its conduct are a pretext. *See Beaver Cemetery v. Pennsylvania Human Relations Commission,* 107 Pa. Commonwealth Ct. 190, 528 A.2d 282 (1987).

With this in mind, and aware of our narrow scope of review,[4] we shall now address Employer's arguments.[5] With respect to the racial harassment claim, Employer argues that there is no substantial evidence to support the Commission's findings that Complainant was subjected to adverse employment consequences and that persons not of Complainant's protected class but other-

---

[4] Our scope of review of an order of the Commission is limited to determining whether constitutional rights have been violated, there has been an error of law, statutory provisions relating to practice and procedure of Commonwealth agencies have been violated or necessary findings of fact are unsupported by substantial evidence. *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission,* 88 Pa. Commonwealth Ct. 443, 489 A.2d 1001 (1985).

[5] The Commission determined that Complainant had established a *prima facie* case of racial harassment by proving the following elements:

1. She belongs to a protected class;

2. She was performing duties which she was qualified to perform;

3. She was subjected to adverse employment consequences; and

4. Persons not of her protected class but otherwise similarly situated were not subject to the adverse consequences.

It further determined that Complainant had established a prima facie case of retaliatory discharge by proving these elements:

1. She engaged in a protected activity;

2. Subsequent to that protected activity she was subjected to an adverse employment consequence; and

3. There was a causal connection between the protected activity and the adverse employment consequence.

We note that Employer does not argue that these elements do not establish a *prima facie* case for the respective claims but only that there is no substantial evidence to prove some of the elements. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Reed v. Miller Printing,* 75 Pa. Commonwealth Ct. 360, 462 A.2d 292 (1983), for the elements required to prove a discrimination case.

wise similarly situated were not subject to those same adverse consequences. With respect to the retaliatory discharge claim, Employer believes there is no substantial evidence to support the Commission's findings that subsequent to engaging in a protected activity (filing a complaint with the Commission), Complainant was subjected to an adverse employment consequence that was caused by her filing that, complaint.

We note that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Pittsburgh v. Commission on Human Relations*, 65 Pa. Commonwealth Ct. 610, 616, 444 A.2d 182, 185 (1982). Further, substantial evidence supporting a finding of racial discrimination may be circumstantial and based on inferences. *St. Andrews Development Co. v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 123, 308 A.2d 623 (1973).

In the present case, we have reviewed the record thoroughly and believe there is substantial evidence to support the Commission's factual findings.

With respect to the racial harassment claim, there was evidence of a negative attitude change on the part of the Ferrones toward Complainant in the spring of 1983.[6] In addition, it is undisputed that Complainant's

---

[6] Mrs. Lois Watkins, Employer's secretary in early 1983, testified that in early 1983 the Ferrones and Carla Pantone began complaining about Complainant's sales, her dress and about her generally. Notes of Testimony from August 29, 1985 at 66. Ms. Watkins testified that she did not notice anything different about Complainant's dress at that time. Notes of Testimony from August 29, 1985 at 67. Ms. Watkins testified that she was asked by Mrs. Ferrone to call the Pennsylvania Bureau of Employment Security so that Mrs. Ferrone could learn how to prohibit Complainant from collecting unemployment compensation if she fired her. Notes of Testimony from August 29, 1985 at 67. Ms. Watkins testified that Mrs. Ferrone began sending Complainant written reprimands and

sales territory was substantially reduced causing her income to drop significantly,[7] yet Employer did not reduce the sales territory of its only other salesperson, Christine Guthrie, a white woman. At about the same time that Employer reduced Complainant's sales territory, it also revised its compensation arrangement so that salespeople whose weekly sales dropped below $1,000.00 received $50.00 weekly base pay rather than $100.00.[8] Christine Guthrie, however, testified that when her sales fell below $1,000.00 weekly, her base pay was not reduced.[9]

We believe this testimony constitutes substantial evidence that Complainant was subjected to adverse employment consequences to which other employees, who were not black, but who were otherwise similarly situated, were not subjected.

With respect to the retaliatory discharge claim, Mrs. Ferrone testified that she had been served with

_____

that Mrs. Ferrone told her that she was hoping the letters would cause Complainant to resign. Notes of Testimony from August 29, 1985 at 69.

Ms. Guthrie testified that in May and June of 1983, Carla Pantone stopped speaking to Complainant. ·Notes of Testimony from August 29, 1985 at 79.

[7] Complainant testified that in May 1983, Employer took the McKeesport and Monroeville areas away from her· (areas which produced about 50% of her income) and assigned those areas to Jennifer Watkins, a white college student who was home for the summer but who planned to return to school in the fall.

We find it significant that although Employer testified that it needed experienced salespeople and desired to promote a long-term relationship between its salespeople and its clients, it took territory away from an experienced, full-time salesperson (Complainant), and assigned it to an inexperienced part-time salesperson whom Employer knew would be leaving in the fall.

[8] Previously, salespeople were paid $100.00 per week base pay regardless of their level of sales.

[9] Notes of Testimony from August 29, 1985 at 82.

Complainant's racial harassment complaint before she discharged Complainant. Further, both Complainant and Mrs. Ferrone testified that just prior to Complainant's discharge Complainant had requested that the McKeesport and Monroeville sales areas be returned to her and that Mrs. Ferrone responded, "I am not giving them back to you, Joyce, I want you to tell me how you can go out there and represent me feeling the way you do, how can you do that?"[10] Shortly after this conversation, Complainant was discharged. Furthermore, Complainant testified that during this conversation Mrs. Ferrone told Complainant that since Complainant had filed a complaint against her with the Commission she no longer wanted Complainant working for her.[11]

We are satisfied that this testimony constitutes substantial evidence that subsequent to engaging in a protected activity (filing a racial harassment complaint), Complainant was subjected to an adverse employment consequence (she was discharged), and that there was a causal connection between her filing the complaint and being discharged.

Employer offered numerous reasons for its actions which, if believed, would have rebutted the inferences of racial discrimination and retaliatory discharge. However, our review of the record reveals that Employer's proffered justifications conflicted sharply with a substantial amount of other testimony in the record. As is her province to do, the hearing examiner simply resolved this credibility conflict in favor of Complainant. *Harmony Volunteer Fire Co. v. Pennsylvania Human Relations Commission,* 73 Pa. Commonwealth Ct. 596, 459 A.2d 439 (1983). Since the hearing examiner rejected each of Employer's justifications as incredible and

---

[10] Notes of Testimony from August 30, 1985 at 197.
[11] Notes of Testimony from August 29, 1985 at 25.

therefore pretextual, the burden did not shift back to Complainant to prove by a preponderance of the evidence that Employer's justifications were a pretext.

We now turn to Complainant's argument that the Commission should have granted her counsel fees. Our review of the Act, and specifically of Section 9 of the Act, 43 P.S. §959(f), reveals that there is no discrete statutory authority for the award of counsel fees by the Commission to a successful litigant.[12] We recognize that the Commission has very broad discretionary powers to effectuate the policies of the Act. *Pennsylvania Human Relations Commission v. Zamantakis*, 478 Pa. 454, 387

---

[12] Section 9 of the Act, 43 P.S. §959(f) provides in pertinent part:

(f) If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action, including, but not limited to, reimbursement of certifiable travel expenses in matters involving the complaint, not to exceed fifty dollars ($50), compensation for loss of work in matters involving the complaint, not to exceed two hundred dollars ($200), hiring, reinstatement or upgrading of employes, with or without back pay, admission or restoration to membership in any respondent labor organization, the making of reasonable accommodations, or selling or leasing specified housing with such equal facilities, services and privileges or lending money, whether or not secured by mortgage or otherwise for the acquisition, construction, rehabilitation, repair or maintenance of housing accommodations or commercial property, upon such equal terms and conditions to any person discriminated against or all persons as, in the judgment of the Commission, will effectuate the purposes of this act, and including a requirement for report of the manner of compliance.

A.2d 70 (1978). We, however, are equally aware that "the Commission, like all administrative agencies, can only exercise those powers which have been conferred upon it by the Legislature." *Id.* at 457, 387 A.2d at 72. In *City of Pittsburgh Commission on Human Relations v. MacBeth*, 480 Pa. 524, 391 A.2d 1109 (1978), our Supreme Court rejected a similar request for counsel fees under Section 13(i) of the Pittsburgh Human Relations Ordinance which contained language almost identical to that considered here in Section 9 of the Act, 43 P.S. §959(f). We conclude that the Board did not err when it denied Complainant's request for counsel fees.

Order affirmed.

## ORDER

The order of the Pennsylvania Human Relations Commission in the above-captioned matters is hereby affirmed.

Judge COLINS dissents.