Tami KECK, Plaintiff,

v.

COMMERCIAL UNION INSURANCE
COMPANY, Defendant.

Civ. A. No. 1:CV 90–1897.

United States District Court,
M.D. Pennsylvania.

Feb. 14, 1991.

David W. Knauer, Mechanicsburg, Pa.,
for plaintiff.

Christopher Charles Conner, Mette, Evans & Woodside, Harrisburg, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

### FACTUAL BACKGROUND

Before the court are defendant's motions to dismiss Counts II and IV of plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f) and to strike plaintiff's requests for counsel fees and punitive damages. The facts alleged in the complaint and plaintiff's brief are as follows. Defendant, Commercial Union Insurance Company, ("Commercial Union") hired plaintiff, Tami Keck ("Keck"), on July 3, 1979 as a file clerk, later promoting her to the position of assembly clerk. Keck was at all times an at-will employee. Keck was diagnosed as having juvenile-onset diabetes mellitus in October, 1979. Between then and January 11, 1989, when Keck was discharged from employment, she was hospitalized and/or absent from work on a number of occasions as a result of illness and childbirth complications related to the disease.

Commercial Union placed Keck on probation for periods of sixty and ninety days because of these hospitalizations and absences. On January 9, 1989 Keck went to

a hospital emergency room with chest pains, at which time her doctor ordered forty-eight hours of bed rest. On January 9 and 10, 1989, Keck's mother and husband reported to Commercial Union that Keck would be absent from work due to her illness. Keck's immediate supervisor and personnel director discharged her when she returned to work on January 11, 1989. Commercial Union informed Keck that her discharge was a result of excessive absenteeism. The date of Keck's discharge was six months prior to the date that her right to 100% of her accrued pension would have vested.

Keck filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") on May 2, 1989. On November 7, 1989, the PHRC issued a letter informing Keck that her complaint had been dismissed for lack of probable cause to credit her allegations of unlawful discrimination. Thereafter, on October 10, 1990, Keck instituted suit in the Cumberland County Court of Common Pleas. Commercial Union removed the action to this court on October 30, 1990.

The complaint is in four counts. Count I alleges that Commercial Union discharged Keck because of a non-job related handicap, in violation of Section 5(a) of the Pennsylvania Human Relations Act, 43 Pa.Stat. Ann. §§ 951, et seq., 955(a) (Purdon 1964 and Supp.1989) ("PHRA"). Counts II and III allege wrongful discharge and a violation of § 510 of the Employment Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001 et seq., 1140 ("ERISA"), respectively, both based on the allegation that Commercial Union discharged Keck to avoid paying her pension benefits. Count IV is a common law breach of contract claim, again based on discharge due to physical handicap, which, Keck urges, is a violation of her employment contract.

DISCUSSION

A. Motion to Dismiss the Wrongful Discharge Claim

Commercial Union's Reply Brief included a copy of a recent decision, *Ingersoll Rand*

*Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), in which the United States Supreme Court held that ERISA preempts any state common law wrongful discharge claim based upon a discharge for the purpose of preventing attainment of pension benefits. In view of that decision, Keck notified this Court that she would not pursue Count II of her complaint. Commercial Union's motion to dismiss Count II is, therefore, moot and the count is deemed withdrawn.

B. Motion to Dismiss the Breach of Contract Claim

Commercial Union moves to dismiss Count IV, a breach of contract claim, on the theory that the allegations underlying it are discrimination and wrongful discharge hence the count is preempted by the PHRA. Commercial Union essentially argues that the PHRA preempts any common law action that involves a prohibited form of discrimination.[1] Keck counters that the results in the preemption cases cited by Commercial Union were based on the plaintiffs' failure to pursue their administrative remedies first with the PHRC. Keck reasons that since she properly pursued her remedies before the PHRC, her breach of contract action is not preempted by the PHRA. Keck and Commercial Union both oversimply, thus, misrepresent the law on this issue. Nonetheless, under the facts of this case, the case law supports a ruling that the breach of contract action is preempted.

The issue of the scope of the PHRA's preemption over common law causes of action has produced conflicting decisions from the Pennsylvania courts. Most of the decisions involved wrongful discharge actions based upon claims of discriminatory discharge. Here, it is a breach of contract claim at issue, which raises the issue of the PHRA's preemption of all common law actions when discrimination is involved, as opposed to wrongful discharge only.

---

1. Commercial Union also argues that plaintiff has not stated a breach of contract claim because her employment with Commercial Union was at-will. Although the court agrees, the decision on the preemption issue will dispose of the need to address that argument.

In *DeRamo v. Consolidated Rail Corp.*, 607 F.Supp. 100 (E.D.Pa.1985), a discharged employee brought claims for breach of an implied employment contract and for age discrimination. The implied contract of employment arose, the plaintiff urged, from his relocation to a new city in reliance upon the employer's promise of continued employment and promotion. *Id.* at 101. The defendant argued that, even if the contract existed, the breach of contract claim was preempted because the plaintiff's sole remedy lay in state and federal statutory relief. Defendant relied on, *inter alia*, the wrongful discharge cases of *Bonham v. Dresser Indus.*, 569 F.2d 187 (3d Cir.1977) *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1979), and *Bruffet v. Warner Commun.*, 692 F.2d 910 (3d Cir.1982).

The *DeRamo* court noted that in *Bruffet* and its predecessors and progeny, the courts declined to expand the public policy-based wrongful discharge tort when the cases involved discrimination. Discrimination, the *DeRamo* court emphasized, is a public policy matter already benefiting from statutory protection. *DeRamo*, 607 F.Supp. at 102. Thus, in those cases, the *DeRamo* court wrote:

> the common thread is that the plaintiffs were complaining of discrimination violative of state and federal anti-discrimination statutes.... [I]n contrast ... Mr. DeRamo's allegations of age discrimination are independent of the allegations for his breach of contract claim. In other words, Mr. DeRamo is not asserting a violation of public policy as the sole source of both a tort exception and an implied-contract (sic) exception to the at-will, employment doctrine. To the contrary, Mr. DeRamo's breach of contract claim is based on his detrimental reliance upon representations made by defendants.... When viewed in this context, the *"Bonham"* cases are inapposite [sic] in that those cases deal only with the public policy tort exception. Similarly, unlike the plaintiffs in the *Bonham* line of cases, it is entirely possible for Mr. DeRamo to succeed on his breach of contract claim without proving discrimina-

tion. In short, plaintiff's age discrimination claim and his breach of contract claim are factually different....

*DeRamo*, 607 F.Supp. at 102. On those facts the *DeRamo* court held that the plaintiff's breach of contract claim was not preempted by the PHRA.

The following year, in *Sola v. Lafayette College*, 804 F.2d 40 (3d Cir.1986), the Third Circuit examined but did not decide whether the PHRA preempted a breach of contract claim based on an express equal opportunity provision in the plaintiff's employment contract. In that case, the plaintiff argued that an equal employment opportunity provision in her employment handbook created an express contractual right to be free from gender discrimination. *Sola*, 804 F.2d at 43–44. The plaintiff attempted to distinguish her case from *Bruffet* and its progeny on the theory that her claim was a well established common law breach of contract action, while those decisions were governed by the courts' refusal to recognize wrongful discharge as a new common law cause of action for discrimination. The plaintiff argued that *DeRamo* indicated that only discrimination claims based on wrongful discharge should be preempted and that established common law actions founded on acts of discrimination should not be barred. *Id.* at 44.

The *Sola* court conceded that the argument had merit but went on to examine the specific language of *DeRamo*, in which the court stated that the Pennsylvania cases:

> bar only causes of action whose factual underpinnings are grounded exclusively in the public policy tort theory of wrongful discharge. They do not bar recovery for claims grounded in the contract theory, a theory which requires a factual predicate independent of any alleged breach of public policy.

*Sola*, 804 F.2d at 44 (quoting *DeRamo*, 607 F.Supp. at 102). The *Sola* court emphasized that *DeRamo* involved a contract claim in which the breach was an act factually distinct from the employee's discrimination claim. The claim before the *Sola* court was that the act of discrimination itself was a breach in violation of her em-

ployment contract. *Sola,* 804 F.2d at 44. Having stated that much, however, the *Sola* court declined to decide whether the PHRA preempted the breach of contract claim before it. Instead, the court ruled on the merits that the record showed no factual support for the employee's claim of discrimination.

In *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917 (1989), the issue before the court was whether the failure to seek a remedy through the PHRC precluded a common law action for employment discrimination. Although the holding goes primarily to the requirement to exhaust administrative procedures, the decision also contains instructive language regarding the viability of common law actions for employment discrimination. The *Clay* court wrote:

> [A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship.... Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.... [T]he PHRA both bestows a right to be free from discrimination ... and prescribes procedures whereby the right "shall" be vindicated.... Clearly, too, the right in question is of purely statutory origin, for, as discussed supra, common law rights to be free from termination of at-will employment are not generally recognized, and we have never held that at-will employment terminations arising from sex discrimination are actionable at common law.

*Clay,* 522 Pa. at 89–90, 559 A.2d at 918–19 (citations omitted). The plaintiff in *Clay* cited to *Fye v. Central Trans. Inc.,* 487 Pa. 137, 409 A.2d 2 (1979), to argue that the legislature intended to preserve the right of aggrieved parties to seek relief for illegal discrimination through common law tort actions. Addressing the *Fye* decision, the *Clay* court wrote:

> Contrary to the Superior Court's interpretation of *Fye,* our reference to an aggrieved party's right to pursue "other remedies that might be available" did not

infer that persons claiming to have been wrongfully terminated from at-will employment were given free rein to bring action in court alleging tortious discrimination.... Rather, the "other remedies" to which we referred were essentially those existing under "provisions of any ... municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination ...," inasmuch as these were expressly saved by the PHRA from being repealed or superseded.... Although the legislature chose not to foreclose ... those other possible remedies, there is no basis for belief that there was intended to be broad and unrestricted access to civil actions, outside of the PHRA, alleging discriminatory termination of at-will employment.

*Clay,* 522 Pa. at 95, 559 A.2d at 921.

In a recent unpublished opinion, *Schweitzer v. Rockwell Int'l,* 586 A.2d 383 (1990), the Pennsylvania Superior Court expanded upon *Clay* insofar as it touched upon the question of the PHRA's preemption of common law tort claims for prohibited discrimination. The *Schweitzer* case involved common law claims arising out of uninvited sexual advances and molestation of the plaintiff by her supervisor. In response to the plaintiff's complaints, the defendant employer fired the supervisor and transferred the plaintiff to another department. The plaintiff instituted a court action for assault and intentional infliction of emotional harm related to the sexual harassment, and discrimination related to her transfer to another department. The trial court granted summary judgment for the defendant, reasoning that plaintiff had not exhausted the exclusive administrative remedies under the PHRA prior to institution of suit in court. *Schweitzer,* at 385.

The Superior Court upheld the trial court with regard to the sexual discrimination claims, which arose exclusively under the PHRA. In regard to the actions for assault and intentional infliction of emotional distress, however, the Superior Court reversed the trial court. The court explained that:

Section 962(c) of the Human Relations Act provides the prerequisite to filing a suit based upon a *discrimination* claim in the common pleas court.... The issue is whether a complainant who filed a claim for sexual discrimination with the Commission may also bring a common-law tort action against her employer in the common pleas court for assault and intentional infliction of emotional distress based upon the same underlying acts.... [W]e must examine the scope of the statute and its remedies to determine the intent of the legislature.

*Id.* (emphasis added) (citations omitted). The court observed that Section 955 of the PHRA describes the actions that constitute unlawful discriminatory practices, which, in the case of employers, includes considering race, color, religious creed, ancestry, age, sex, national origin, or non-job related handicaps or disability, with respect to the conditions or privileges of employment. The prohibited practices, such as discriminatory hiring, firing, and promoting did not include molestation, which was the underlying act for the plaintiff's discrimination, assault, and intentional infliction of emotional harm. *Id.* at 385–86. The court held that the PHRA's preemption provision preempts:

civil actions based upon the same grievance declared unlawful by § 955 of the Act.... "[G]rievance" refers to the phrase "acts declared unlawful by section 5 of this act," and can in no way be construed to mean the "underlying acts" themselves. We conclude that nothing in the intent of the Legislature or in the language of the Act forbids independent legal actions based upon the underlying acts, in this case assault and intentional infliction of emotional distress.

*Schweitzer,* at 388–89.

The interests implicated by the plaintiff's claims for assault and intentional infliction of emotional distress were, the *Schweitzer* court wrote, fundamentally different from those she sought to protect by her claim for sexual discrimination under the PHRA. *Id.* The court distinguished *Fye* and *Clay,* on the grounds that *Fye* involved no independent common law tort claims, while

*Clay* only established that a wrongful discharge claim based upon discrimination is preempted by the PHRA and did not hold that a common law claim for intentional infliction of emotional distress is barred generally by the PHRA. *See Schweitzer,* at 387. Thus, the *Schweitzer* court ruled that the plaintiff's tort claims were procedurally and functionally independent of her sexual discrimination claims and, therefore, were not preempted and need not be adjudicated within the framework of the PHRA. *Id.* at 387. *See also Mann v. J.E. Baker Co.,* 733 F.Supp. 885 (M.D.Pa.1990) (Caldwell, J.) (counts in negligent evaluation of job performance, fraudulent misrepresentation, wrongful discharge based on specific intent to harm, and interference with existing contractual relationships were neither based upon acts of sexual discrimination nor actionable under PHRA and, therefore, were not precluded under *Clay* and similar cases).

The *Clay, Schweitzer,* and *Mann* decisions confirm that if a common law tort claim and a discrimination claim are brought in the same lawsuit, the common law claim will not be preempted by the PHRA if it is factually independent of the discrimination claim. Thus, if an employer effected all the elements of intentional infliction of emotional distress upon an employee, and chose to do so because the employee was black, the employer may be found liable for discrimination as well as intentional infliction of emotional distress. *DeRamo* and *Sola* further flesh out the preemption issue for breach of contract claims. The factor critical to the result in *DeRamo* was that the plaintiff alleged a set of facts (a promise, a move to a new city in reliance on the promise, a failure to fulfill the promise, and resultant damages) to support independently a breach of implied contract claim regardless of the discrimination claim. Similarly, the *Sola* court, while declining to rule on the preemption issue, suggested that there must be an act of breach separate from the act of discrimination for a breach of contract claim to escape preemption by the PHRA.

Thus, the general rule that has emerged, albeit tortuously, is simply that if all or part of the facts that would give rise to a discrimination claim would also independently support a common law claim, the common law claim is not preempted by the PHRA and need not be adjudicated within its framework. If, however, the act that would support the common law claim is only an act of discrimination, the claim is preempted by and must be adjudicated within the framework of the PHRA. This rule holds true for any otherwise viable common law claim, whether in tort or contract. For a breach of contract claim, the breach complained of must be something other than the discrimination complained of.

In the case at bar, the plaintiff claims that the act of discrimination was a breach of her employment contract (presumably an implied contract). There is no separate set of facts that support either the existence of a contract or a breach thereof that is outside of the act of discrimination. Under the reasoning of the decisions discussed, the plaintiff's breach of contract claim is preempted by the PHRA.[2]

### C. Motion to Strike the Request for Punitive Damages

■ Commercial Union asserts that Keck's request for punitive damages under her PHRA claim must be stricken because the statute does not specifically authorize punitive damages and because of decisions disallowing punitive damages under Title VII of the Federal Civil Rights Act, 42 U.S.C.A. 2000e *et seq.* Commercial Union argues that since Pennsylvania courts have been guided by Title VII in construing the PHRA and since in *Protos v. Volkswagen of America Inc.,* 797 F.2d 129, (3d Cir. 1986), *cert. denied* 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986), the Third Circuit ruled that punitive damages are not

available for Title VII violations, it follows that punitive damages are not available under the PHRA. Those premises, though true, do not lead to the conclusion advanced by Commercial Union.

It is true that Title VII cases may provide guidance for issues that arise under the PHRA. It is also true that Section 706(g) of Title VII expressly provides for awards of backpay or "any other equitable relief," and that courts have held, accordingly, that relief other than back pay and equitable relief is not authorized under Title VII. The language of the PHRA and that of several decisions, however, provides the basis for distinguishing Title VII decisions on the issue of punitive damages. In fact, *Protos,* the Title VII decision cited by defendant to argue that punitive damages are not available under the PHRA, contains language that soundly negates that proposition.

In *Protos,* the court held that Title VII's provision authorizing the award of "any other equitable relief" the court deems appropriate does not authorize an award of the value of unemployment compensation benefits. *Protos,* 797 F.2d at 138. The court reasoned that unemployment compensation benefits are akin to compensatory damages, which like punitive damages are considered *legal* relief. *Id.* Since the Third Circuit had held previously that punitive damages are not available under Title VII because they are viewed as a legal remedy, the *Protos* court held that compensatory damages are unavailable as well. *Id.* (citing *Richerson v. Jones,* 551 F.2d 918 (3d Cir.1977)).

Unlike Title VII, however, the relief provision of the PHRA, 43 P.S. § 962(c) is quite broad and expressly authorizes action including but not limited to back pay or "any other legal or equitable relief as the

---

2. The court does not believe the result would be different even if the facts included an express contractual provision declaring that the employer would not discriminate illegally against the employee. In that regard, every contract, whether express or implied, is deemed to include all the lawful rights due each party, which would include the right to be free from unlaw-

ful discrimination. By that reasoning, every act of discrimination might be said to be a breach of the promise not to discriminate, whether implied or express. The statutory scheme set up by the PHRA, expressly designed to encompass claims for illegal discrimination, may not be circumvented by such circuitous reasoning.

court deems appropriate." Further, despite the paucity of state court decisions and several conflicting federal district court decisions, there are decisions that persuade this court that punitive damages are permissible under the PHRA. The Pennsylvania Commonwealth Court has upheld the award of punitive damages, expressly holding that the PHRA does not contain the damages limitation expressed in Title VII. *Brown Transport Corp. v. Commonwealth of Pa., Pa. Hum. Rel. Comm'n,* 133 Pa.Com. 545, 578 A.2d 555, 562 (1990). Further, other courts have recognized that relief under the PHRA is not limited to that available under Title VII. *See, e.g., Nestor v. Quaker State Coca-Cola Bottling Co.,* 579 F.Supp. 289, 292 (W.D.Pa.1984); *Pennsylvania Human Rel. Comm'n v. Zamantakis,* 478 Pa. 454, 459, 387 A.2d 70, 73 (1978) (under "legal or equitable relief" provision, court could award damages for humiliation and mental anguish).

As to the conflict in the federal courts, this court believes the decisions in which punitive damages were allowed are more persuasive and, perhaps, distinguishable from those in which punitive damages were not allowed. In *Cain v. Hyatt,* 734 F.Supp. 671, 685 (E.D.Pa.1990), the court predicted that the Pennsylvania Supreme Court would allow the imposition of punitive damages under the PHRA. The court relied on the language of *Zamantakis* approving damages for humiliation and mental anguish, the fact that punitive damages are considered a form of legal relief, and the "sweeping remedial purpose and language" of the PHRA. *Id.* In *Welcker v. Smithkline Beckman,* 746 F.Supp. 576, 579 (E.D. Pa.1990), the court acknowledged the conflict in the case law over this issue. The court, however, provided a well-reasoned argument for its view that punitive damages are available under the PHRA.

The *Welcker* court noted first, that the Pennsylvania Supreme Court has found that the PHRA permits courts to award " 'legal or equitable' relief includ[ing] damages for humiliation and mental anguish." *Welcker,* 746 F.Supp. at 579 (quoting *Zamantakis,* 478 Pa. at 459, 387 A.2d at 73).

The *Welcker* court further relied upon the Commonwealth Court's *Brown* ruling allowing an award of punitive damages. The *Welcker* court then pointed out that a number of lower state courts and federal district courts have awarded or upheld the award of compensatory or punitive damages. *See Welcker,* 746 F.Supp. at 580. Finally, the *Welcker* court dismissed decisions that have denied punitive damages because those decisions were based upon the belief that the plaintiffs should have sought their damages under claims of intentional infliction of emotional distress, a position the *Welcker* court found untenable. *Id.* (citations omitted).

This court agrees with the *Brown, Cain,* and *Welcker* courts. There is no question that punitive damages are considered a form of legal relief and that the statute authorizes legal relief in addition to equitable relief. The fact that Title VII provides a framework for construing the PHRA does not mean that the courts must flesh out that framework exactly as Title VII has been. This is particularly true when a specific provision of the PHRA diverges from the corollary provision in Title VII. The statutory language, its divergence from that found in Title VII's remedies provision, and the case law indicate that the Pennsylvania Supreme Court would find the award of punitive damages permissible under the PHRA. Accordingly, the court will deny Commercial Union's motion to strike plaintiff's request for punitive damages.

### D. Motion to Strike the Request for Attorneys' Fees

■ Keck supports her request for attorney's fees under the PHRA by arguing that attorney's fees, like compensatory or punitive damages, may be awarded as "equitable or legal" relief. Commercial Union argues, on the other hand, that attorneys' fees are not available because the PHRA does not provide for them expressly. According to Commercial Union, *Consumers Motor Mart v. Commonwealth of Pa.,* 108 Pa.Com. 59, 529 A.2d 571 (1987) "specifically held that such an award is not warranted

by the Act." Defendant's Brief, at 5. In fact, *Consumers Motor Mart* held only that the Pennsylvania Human Relations Commission has no authority to award counsel fees, *id.* at 67, 529 A.2d at 575–76, and this court fully agrees.

The Commission is, of course, an administrative agency created by statute. As such, it is an "extra judicial" tribunal, which, the Pennsylvania Supreme Court advises, must exercise its power and authority within the strict and exact limits of the statutory provisions under which it operates. *Process Gas Consumers Group v. Pennsylvania Public Utility Commission,* 511 Pa. 88, 511 A.2d 1315 (1986). The *Consumers Motor Mart* holding is merely consistent with this established limitation upon the powers of extra judicial tribunals. The holding can not be construed as a restriction upon a court's equitable and legal powers. The *Zamantakis* court attested to that when it held that the Commission had no power to award damages for humiliation and mental anguish, but observed that after the legislature amended the PHRA to permit courts to fashion "any other legal or equitable relief as the court deems appropriate," a court could award such damages. *Zamantakis,* 478 Pa. at 459, 387 A.2d at 73.

Nevertheless, the court does not view the "equitable or legal relief" provision of the PHRA as a basis for awarding counsel fees outside the confines of the American Rule, which compels each party in a lawsuit to bear its own attorneys' fees. There are exceptions to the rule, including the statutory and contractual allowances for attorneys' fees noted by Commercial Union. The court agrees that neither of those exceptions applies to the instant case. There is, however, another exception which allows federal courts to exercise their equitable powers and award attorney fees to the prevailing party when the party's opponent has acted " 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Ford v. Temple Hosp.,* 790 F.2d 342, 346 (3d Cir.1986); *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). In Pennsylvania, the bad faith exception has been bolstered by a statutory exception, which provides reasonable attorneys' fees when "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa. Cons.Stat.Ann. § 2503(9).

The bad faith exception is punitive in nature. *Hall,* 412 U.S. at 5, 93 S.Ct. at 1946. Although it is applied most commonly to conduct during the pursuit of litigation, the exception is also applicable to the conduct that forms the basis of an action. *Id.* at 15, 93 S.Ct. at 1951; *Straub v. Vaisman & Co.,* 540 F.2d 591, 598 (3d Cir.1976). In keeping with its punitive nature, however, an award of attorneys fees under this exception is warranted only when the conduct reflects a " 'willful and persistent defiance of the law.' " *Straub,* 540 F.2d at 598 (quoting *Kahan v. Rosenstiel,* 424 F.2d 161, 167 (3d Cir.1970) *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970)). Thus, the standard for applying counsel fees under the bad faith exception is quite stringent, unlike the standard for award of attorneys fees under Title VII, 42 U.S.C. 2000e–5(k). *See Rosenfeld v. Southern Pacific Co.,* 519 F.2d 527 (1975) (under Title VII, award of attorneys' fees is considered award of "costs," which is the usual practice in American court system and not considered "punishment").

In light of the broad equitable and legal power afforded the court under the PHRA's remedies provision, the bad faith exception to the American Rule, and Pennsylvania's statutory bad faith exception, this court believes that an award of counsel fees is possible under the PHRA. Such an award would be the exception rather than the rule. The court cautions plaintiff that counsel fees for conduct related to the basis of the action would not be awarded if punitive damages were denied and moreover, would not necessarily be awarded simply because punitive damages were awarded. Whether the plaintiff can overcome the American Rule remains to be seen. For the present, however, the court will deny Commercial Union's motion to strike the request for attorneys' fees. The court will enter an order in accordance with this memorandum.

## ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) Count II of this action is deemed withdrawn;

2) Defendant's motion to dismiss Count IV is granted;

3) Defendant's motion to strike plaintiff's request for punitive damages is denied;

4) Defendant's motion to strike plaintiff's request for attorney's fees is denied.