Allegheny Housing Rehabilitation Corp., Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

444

Argued October 18, 1984, before Judges CRAIG and PALLADINO and Senior Judge BARBIERI, sitting as a panel of three.

*Wendell G. Freeland,* with him, *John A. Meyer, Freeland & Kronz,* for petitioner.

*Michael L. Foreman,* Assistant General Counsel, with him, *Elisabeth S. Shuster,* General Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, March 29, 1985:

Allegheny Housing Rehabilitation Corporation (AHRCO)[1] appeals here a final order of the Pennsylvania Human Relations Commission (HRC) which adopted the findings of fact, conclusions of law and opinion of the Hearing Commissioner who concluded that AHRCO violated Section 5 of the Pennsylvania Human Relations Act (Act)[2] prohibiting discrimination on the basis of sex when it discharged Faith L. Hodge (Complainant) from its employ.

Faith Hodge initiated this action by filing a complaint with the HRC on or about November 16, 1978, alleging that on or about October 31, 1978, her employer violated Section 5 of the Act by discharging her from the position of Security Manager because of her sex, female, and replacing her with one or more male security officers. The HRC investigated the allegations set forth in Hodge's complaint and in December, 1981, found probable cause to credit the allegations of the complaint. A public hearing was held before Commissioner Elizabeth M. Scott, both parties having agreed to a hearing before a single Commissioner.

---

[1] AHRCO was the management agent for the Department of Housing and Urban Development, mortgagee in possession of Second East Hills Park, a multi-family housing development in Pittsburgh, Pennsylvania.

[2] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955.

The following are the relevant facts as found by Commissioner Scott and adopted by the HRC. Complainant, a resident of Second East Hills Park, applied for and received a position as security officer at Second East Hills Park; her duties included patrolling the Second East Hills Park area, responding to tenants' calls and submitting routine reports. Shortly after she went to work as a security officer in August, 1978, Complainant's duties were increased to include supervisory responsibilities. The resident manager at Second East Hills Park advised Complainant she had been promoted to Security Manager. The duties of the Security Force Supervisor, as outlined in AHRCO's Security Force Policy, are essentially the same as those performed by Complainant as Security Manager.

Complainant was never advised that her work was unsatisfactory; nevertheless, Complainant was advised by letter dated November 2, 1978 that she was being terminated from her position as Security Manager because of a realignment of the security force. Following Complainant's termination, more security officers, all male, worked more hours at Second East Hills Park than worked at the time of her termination.

The Commissioner, and subsequently the HRC, held that Complainant had met her burden of proving that she was terminated from her position for reasons not having to do with her performance and that she was replaced by one or more males and that AHRCO's explanation for the termination was pretextual.[3] The HRC, therefore, concluded that AHRCO

---

[3] The Commissioner's actual conclusion of law which was adopted by the HRC reads as follows:

> 8. Respondent has failed to demonstrate that its conduct in terminating Complainant did not violate the Act. Its explanations for the termination were pretextual.

discriminated against Complainant on the basis of her sex when it discharged her from her position as Security Manager, in violation of Section 5 of the Act.

The HRC ordered that AHRCO cease and desist from discriminating on the basis of sex in the operation of its security force; that AHRCO pay to Complainant back pay in the amount representing that which she would have earned working forty hours per week for the period between November 2, 1978 and February 1, 1982,[4] less six weeks pay, plus interest at the rate of six percent *per annum;* that AHRCO publicize any and all openings on its security force by means reasonably calculated to assure female applicants; that notice of such openings be provided to Complainant and the HRC before they are filed for a period of three years from the date of the order; and that AHRCO report to the HRC on a quarterly basis for three years from the date of the Order, indicating all security positions filled by it including the names and addresses of all rejected applicants and the reasons therefor. This appeal followed.

We may not disturb an order of the HRC unless its determination violates the constitutional rights of the appellant, is not in accordance with the law or the

We note that the above conclusion of law comes dangerously close to shifting the ultimate burden of persuading the trier of fact that the employer's motives were *not* discriminatory upon the employer. The United States Supreme Court in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981), remanded the case to the Court of Appeals because that court had erred when it required the defendant to prove by a preponderance of the evidence the existence of non-discriminatory reasons for terminating the complainant. The Court emphasized that when the complainant has proved a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the non-discriminatory reasons for its actions. 450 U.S. at 160.

4 AHRCO did not manage Second East Hills Park after February of 1982.

proceedings violated the statutory provisions relating to practice and procedure of Commonwealth agencies, or the findings of fact necessary to support the adjudication are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

AHRCO argues before this Court that the findings of fact crucial to the HRC's determination are not supported by substantial evidence and that, therefore, Complainant did not carry her burden of establishing a *prima facie* case of sex discrimination thereby eliminating any burden of AHRCO to come forward with evidence of a legitimate non-discriminatory motive for discharging Complainant.

By "crucial findings" we assume AHRCO refers to those findings supportive of the essential elements of a *prima facie* case of sex discrimination, proof of which is mandated by decisional law.

The procedure governing adjudication of claims of discriminatory employment practices was first articulated by the United States Supreme Court in *McDonnell-Douglas v. Green,* 411 U.S. 792 (1973), refined in more recent Supreme Court cases, *see e.g. United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S. Ct. 1478 (1983); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981), and adopted by the Pennsylvania Supreme Court in *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976).

First, as stated above, Complainant has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. The essential elements of Complainant's *prima facie* case of discrimination on the basis of sex are that (1) she is a member of a protected class (female), (2) that she was

hired for a job for which she was qualified, (3) that she was discharged, and (4) that she was replaced with one or more males with equal or lesser qualifications.[5]

If the Complainant succeeds in proving the *prima facie* case, there is a rebuttable presumption of sex discrimination, and the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the employee's discharge. If the defendant succeeds in rebutting the presumption of discrimination, it is the Complainant's obligation to prove by a preponderance of the evidence that the reasons offered by the defendant were pretextual. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the Complainant is always the Complainant's. *Caterpillar Tractor Co. v. Pennsylvania Human Relations Commission,* 78 Pa. Commonwealth Ct. 86, 466 A.2d 1129 (1983) citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 252-53.

AHRCO admits Complainant has established as part of her *prima facie* case that she is a member of a protected class and that she was discharged. AHRCO does not specifically dispute the fact that Complainant was qualified for the job as security officer; it would,

---

[5] The four-prong test articulated in *McDonnell-Douglas Corp. v. Green* requires a complainant to show (1) that he is a member of a protected minority, (2) he applied for a job for which he was qualified, (3) he was rejected, and (4) the employer continued to seek applicants of equal qualifications. As this Court emphasized, however, in *Reed v. Miller Printing Equipment Division of Western Gear Corp.,* 75 Pa. Commonwealth Ct. 360, 462 A.2d 292 (1983), ". . . an employee alleging discrimination is not necessarily restricted to the specific criteria set forth in *McDonnell-Douglas* in order to establish a prima facie case. . . . Thus, the standard is in actuality a flexible one contingent on the peculiar factual details of a given scenario." *Id.* at 364, 462 A.2d at 294.

indeed, be difficult to dispute Complainant's qualifications as she has higher education in police matters, as well as municipal police training in conjunction with her service as a member of the Police Department of the City of Pittsburgh. Her suitability for the position is further evidenced by the fact that she was told at her initial interview that Second East Hills Park needed a security officer with police experience.

AHRCO disputes any conclusion that Complainant was replaced by one or more males with equal qualifications contending there is no support in the record for such an assertion. The uncontroverted evidence of record indicates that during Complainant's tenure at Second East Hills Park, beginning in September, 1978, six persons were paid as security officers at the housing development. Complainant and another individual worked approximately forty hours per week. Four other male security officers averaged twenty to thirty-two hours of duty per week. After Complainant's discharge, two employees, both male, worked approximately forty hours per week, and five employees, all male, worked approximately twenty to thirty-two hours each week. Accordingly, two males replaced Complainant after her discharge.

Thus, the burden shifted to AHRCO to articulate a legitimate non-discriminatory reason for Complainant's discharge. AHRCO, in its brief, however, rejected any obligation to do so. The HRC in its adopted opinion, listed and disposed of three allegedly non-discriminatory reasons offered for Complainant's discharge at the hearing.[6] In response to AHRCO's assertion that it was compelled to discharge Complainant

---

[6] Questions of credibility and of the weight of the evidence are for the HRC to decide. *Harrisburg School District et al. v. Pennsylvania Human Relations Commission*, 77 Pa. Commonwealth Ct. 594, 466 A.2d 760 (1983).

from her position as Security Manager because there was no such position under the rules and regulations provided to AHRCO by the Federal Department of Housing and Urban Development, the HRC stated that such explanation ignores the plain language of Complainant's letter of termination which advised she was being terminated from the position of Security Manager and was mere pretext. Similarly, it rejected AHRCO's assertion that the "realignment" which it offered as explanation to Complainant in its letter to her informing her of her discharge was prompted by economic necessity as the "realignment" resulted in more rather than fewer security officers working at Second East Hills Park. Finally, it rejected, also as pretext, AHRCO's assertion that it was obligated to discharge Complainant because she was not a member of Certified Police Unit 644 (CPU 644) with whom AHRCO allegedly had an exclusive "hiring hall" arrangement with regard to its security staff. The HRC found as fact that Complainant had never been informed, either prior or subsequent to hire that membership in CPU 644 was a condition of employment and that, if, indeed, there was such an exclusive relationship, no documentary evidence to support the assertion had been produced.

AHRCO argues that the HRC relied upon incompetent hearsay evidence when it determined AHRCO violated Section 5 of the Act.[7] We are not persuaded by AHRCO's argument for the very reason that the alleged hearsay evidence went to the issue of intent to discriminate and AHRCO's failure to articulate a *legitimate* non-discriminatory motive for discharging

---

[7] Complainant testified at the hearing that the security officer with whom Complainant most often worked told her that he had heard that at a recent meeting of the membership of CPU 644 someone had demanded that AHRCO "get rid of that girl."

Complainant obviated the need for Complainant to proceed with the ultimate burden of proving AHRCO's intent to discriminate against her. Thus, the HRC was relieved from adjudicating the issue of discriminatory intent and, in the process, deciding the competence of the evidence submitted by Complainant.

We can detect no error in the proceedings before the HRC. Therefore, we will not disturb the HRC's order which is supported by substantial evidence and is in accordance with the law.

### ORDER

Now, March 29, 1985, the order of the Pennsylvania Human Relations Commission, docket number E-14987, dated July 5, 1983, is hereby affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.