557 A.2d 1152

Allegheny Housing Rehabilitation Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued February 6, 1989, before Judges COLINS and MCGINLEY, and Senior Judge BARBIERI, sitting as a panel of three.

*James Anthony Prozzi,* with him, *Stanley M. Stein, Feldstein, Grinberg, Stein & McKee,* for petitioner.

*Vincent A. Ciccone,* with him, *Diane Blancett-Maddock,* and *Elisabeth S. Shuster,* for respondent.

OPINION BY SENIOR JUDGE BARBIERI, April 24, 1989:

Allegheny Housing Rehabilitation Corporation (AHRC) appeals the July 7, 1988 final order of the Pennsylvania Human Relations Commission (Commission), which adopted the June 16, 1988 recommendation of the Hearing Examiner, who found that AHRC violated Section 5(a) of the Pennsylvania Human Relations Act[1] (Act) in terminating Faith L. Hodge's (Hodge) employment as a security manager.

Issues presented for review are whether the Commission erred in failing to hold an additional evidentiary hearing and in entering a substantially similar order as that originally issued after the Pennsylvania Supreme Court remanded this matter and stated, *inter alia,* that the record was "woefully inadequate"; and whether the

---

[1] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955, which provides in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, ... :

(a) For any employer because of the ... sex ... of any individual ... to discharge from employment such individual, ...

Commission erred in permitting a Hearing Examiner, who was not present at the public hearing, to assess the credibility of witnesses and formulate new findings on the basis of a cold record. Since we must remand on the first issue, we do not reach the second.

AHRC, a limited profit corporation that manages non-profit and low-income housing developments, served as management agent of Second East Hills Park (Housing Development), a Pittsburgh housing development, for the Department of Housing and Urban Development (HUD). HUD operated the Housing Development as mortgagee-in-possession upon the owner's default.

HUD regulations required AHRC to provide security services for the Housing Development within HUD-imposed budgetary constraints. AHRC thus elicited several bids from security firms but rejected them as too high and thereafter hired individuals as independent contractors to serve as security guards for the Housing Development.[2]

In mid-August 1978, Hodge was hired as a security guard for the Housing Development by AHRC's resident manager and, within one month, was promoted to security manager.[3] By letter dated November 2, 1978, AHRC's director of management, the resident manager's

---

[2] AHRC conceded that these individuals enjoyed "employee" status. Moreover, except for Hodge, all security guards were recruited from Certified Police Unit 644, a non-profit association of state certified police officers that contracted with housing developments and business establishments to provide security services. Stipulation of Fact No. 12.

[3] Hodge attended college for three years and, in 1977, graduated from the Allegheny County Police Academy. She was certified by the Municipal Police Officers' Education and Training Commission and, between 1976 and 1978, was employed as a City of Pittsburgh police officer. N.T., pp. 5-7; Stipulation of Fact No. 7; Findings of Fact Nos. 1-2.

superior, advised Hodge that her services as security manager were terminated due to realignment of AHRC's security force. Hodge subsequently filed a complaint with the Commission, alleging that she was unlawfully discharged because of her sex. AHRC, in response, contended that Hodge's dismissal was based upon her lack of membership in Certified Police Unit 644 (Unit 644); AHRC's security force realignment; and non-existence of a security manager position.

After public hearing, the Hearing Examiner[4] concluded that AHRC had unlawfully discriminated against Hodge on the basis of her sex. The Commission adopted the Hearing Examiner's findings of fact, conclusions of law and opinion by final order dated July 5, 1983, whereupon AHRC petitioned this Court for review.[5] This Court, having found the Commission's July 5, 1983 final order supported by substantial evidence and in accordance with the law, affirmed the Commission's finding of sex-based discrimination. *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission,* 88 Pa. Commonwealth Ct. 443, 489 A.2d 1001 (1985).

AHRC petitioned for, and was granted, allowance of appeal by the Pennsylvania Supreme Court, which vacated this Court's judgment and remanded the matter to the Commission to cure its misapplication of the standard

---

[4] Both parties waived their right to a public hearing before a panel of three Commissioners pursuant to Section 9 of the Act, 43 P.S. §959.

[5] This Court's scope of review is limited to determining whether the complainant's constitutional rights were violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Beaver Cemetery v. Pennsylvania Human Relations Commission,* 107 Pa. Commonwealth Ct. 190, 528 A.2d 282 (1987), *petition for allowance of appeal denied,* 518 Pa. 627, 541 A.2d 1138 (1988).

of proof.[6] *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission*, 516 Pa. 124, 532 A.2d 315 (1987). The Supreme Court found that Hodge had presented sufficient evidence to support a *prima facie* case of sex-based discrimination under the Act;[7] that AHRC advanced a legitimate, non-discrimina-

---

[6] The Supreme Court essentially explained that where, as here, proceedings are prompted by alleged sex-based discriminatory employment practices pursuant to the Act, the complainant carries the initial burden of proving a *prima facie* case of sex-based discrimination by a preponderance of the evidence. To establish a *prima facie* case, the complainant must produce sufficient evidence which, if believed and otherwise unexplained, suggests that the occurrence of discrimination is more likely than not. Once the complainant establishes a *prima facie* case, the burden shifts to the employer to advance a non-discriminatory explanation for its action. Absent such an explanation, a rebuttable presumption of discrimination arises from the complainant's *prima facie* case and the complainant must prevail with respect to the factual issue of discrimination. However, if the employer offers evidence from which the factfinder could rationally conclude that the action taken by the employer was not discriminatorily motivated, the presumption of discrimination falls. The factfinder must then evaluate all of the evidence in accordance with the preponderance standard and decide which party's explanation of the employer's motivation is to be believed. While the complainant may present evidence and argument discrediting the employer's explanation as unworthy of belief or otherwise inadequate, she is not entitled to a presumption of discrimination but must persuade the factfinder, by a preponderance of the evidence, that the employer's explanation is pretextual. Accordingly, the complainant always retains the ultimate burden of persuasion on the issue of whether the employer had a discriminatory motive. *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission*, 516 Pa. 124, 532 A.2d 315 (1987).

[7] Hodge's evidence demonstrated that she was a female who was hired and discharged from a position for which she was qualified and included as well payroll records of AHRC's security personnel that disclosed the number of individuals working and the number of hours worked during the relevant periods before and after Hodge's dismissal. More security personnel, all of whom were male, worked a greater number of hours after Hodge's dismissal. Stipulations of Fact Nos. 16-17.

tory reason for Hodge's dismissal sufficient to satisfy its burden of production; and that AHRC's evidence thus raised a question of fact as to whether it intentionally discriminated against Hodge.

The Supreme Court further found that both the Commission and this Court misapplied the shifting burdens of proof. The Supreme Court noted as well that many witnesses, who may have offered significant evidence, did not testify; and stated that it could not be certain whether the Commission's findings of fact were influenced by a mistaken view of the law or whether substantial evidence supported the Commission's determination in light of the "woefully inadequate" record and heightened level of scrutiny erroneously applied to AHRC's evidence.

On remand, the Commission appointed a new Hearing Examiner to replace the original Hearing Examiner, who was no longer with the Commission, and advised the new Hearing Examiner to review the record and submit a recommendation to the full Commission. The new Hearing Examiner neither conducted further evidentiary proceedings nor received additional evidence.

After review of the record, the new Hearing Examiner found that Hodge sustained her burden of establishing a *prima facie* case and that AHRC met its burden of producing evidence of a legitimate, non-discriminatory reason for Hodge's dismissal. The new Hearing Examiner further found, after evaluation of both parties' evidence, that Hodge satisfied her ultimate burden of proving sex-based discrimination by a preponderance of the evidence. The Commission, having determined that substantial competent evidence supported these findings, adopted the new Hearing Examiner's recommendation by final order dated July 7, 1988 and awarded back pay and interest to Hodge; entered a cease and desist order against AHRC; ordered AHRC to publish all security

force openings in a manner calculated to assure female applicants; and instituted a reporting procedure to track AHRC's compliance efforts. This petition for review followed.

As to AHRC's initial contention that the Commission erred in failing to hold further evidentiary proceedings in light of the Supreme Court's holding that the evidence of record was "woefully inadequate" to support a finding of sex-based discrimination, we note that the majority opinion of the Supreme Court contains the following statements:

> The transcript of the hearing in this case displays a kind of gamesmanship played out between the parties (more precisely, their counsel), with a primary objective being the presentation of the bare minimum amount of evidence necessary to meet the burdens of proof as they were thought to exist under McDonnell Douglas [McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973)] and General Electric [General Electric Corporation v. Pennsylvania Human Relations Commission, 469 Pa. 292, 365 A.2d 649 (1976)]. Many witnesses whom it would be thought could offer important proof on behalf of both sides were not presented. Because the record is thus *woefully inadequate* and because the Commission erroneously subjected the employer's proof to a heightened level of scrutiny, we cannot be certain that its findings of fact were not influenced by its mistaken view of the law or that substantial evidence supports its conclusion (footnote omitted). We accordingly vacate the judgment of the Commonwealth Court and remand the case to the Commission for further proceedings consistent with this opinion. (Emphasis added.)

*Allegheny Housing Rehabilitation Corporation*, 516 Pa. at 134-35, 532 A.2d at 321.

As we have previously pointed out, the Hearing Examiner appointed by the Commission held no hearing, nor did he offer to the parties the opportunity to present further evidence, but simply followed the directive of the Commission, avoiding compliance with the import of the Supreme Court's opinion, so that the record now stands as it did when it was deemed inadequate by the Supreme Court. Our conclusion is that, pursuant to the Supreme Court's comment, the parties were at least entitled to be offered an opportunity to present additional testimony, which offer was not tendered by the Hearing Examiner or the Commission. We conclude, most regretfully, because of the delays thus far in this litigation, that a remand is necessary in order to afford the opportunity clearly envisioned by the Supreme Court for the parties to offer evidence should they wish to do so at a regularly convened hearing.

In connection with the remand, we find that the same "obvious conflict" noted by the Supreme Court with respect to the Commission's July 5, 1983 decision is present in its July 7, 1988 decision. *See id.*, at 135 n.4, 532 A.2d at 321 n.4. The Commission again relies, in part, upon the Security Force Policy to establish existence of a security manager position during Hodge's period of employment. The Commission compared the striking similarity between the duties of the security supervisor position, created after Hodge's termination and set forth in the Security Force Policy, and those performed by Hodge. Yet, the Commission again appears to ignore another provision contained in the Security Force Policy which requires that applicants must be certified by the Pennsylvania State Police to carry a firearm and must have passed a psychological test administered by the State Police. As noted by the Supreme

Court, Hodge does not satisfy either condition, although she had weapons certification during her tenure as a police officer. The Supreme Court also noted that if this document is given credence and considered relevant to conditions at the time of Hodge's employment, the Commission would have to disregard substantial evidence to find that Hodge was qualified for a security guard position.

Review of the record, however, appears to support the Commission's partial consideration of the Security Force Policy. First, the parties stipulated that security personnel *duties* as set forth in this document were comparable to those performed by Hodge. Stipulation of Fact No. 11. There was no stipulation as to the relevance of any other provision contained therein. Consequently, the Commission was bound only by the limited stipulation of the parties and not by this document in its entirety. Moreover, the document itself, in conjunction with record evidence, appears to demonstrate that AHRC did not strictly adhere to all terms contained therein, rendering the document suspect. A provision of this document, *e.g.*, sets a ceiling upon the number of security personnel to be hired, yet AHRC exceeded these numbers during and after Hodge's employment. In any event, a document drafted after Hodge's dismissal could hardly be deemed competent evidence of the basis for that dismissal; certainly, not controlling.

We further note that the Commission failed to address a hearsay issue raised by AHRC challenging a portion of the Hearing Examiner's discussion which states that:

> The evidence considered as a whole leads to the conclusion that no agreement existed. Instead, security guards under the Complainant's supervision only complained about the Complainant after her selection as supervisor. It would

appear that their complaint was more concerned with being supervised by the Complainant, perhaps because she is a woman, than with the fact that Complainant was not a member of C.P.U. 644 [Unit 644].

AHRC asserts that the only evidence of record to support these statements is Hodge's inadmissible hearsay testimony that the security guard with whom she most often worked told her that he heard that Unit 644 members held a meeting prior to her discharge at which someone demanded that AHRC "get rid of that girl". It appears, however, that substantial competent evidence exists that Unit 644 members held a meeting on or about October 14, 1978, shortly after Hodge's promotion, to discuss their problems with AHRC's management personnel. Among the problems discussed was Hodge's employment. Stipulation of Fact No. 13. Moreover, the Hearing Examiner's speculation that the complaints may have been prompted, in part, by Hodge's sex is mere surplusage since the Hearing Examiner was clearly concerned with the timing of the complaints to supplement his conclusion that no agreement existed. Even if no other substantial competent evidence supported the subject statement, the Hearing Examiner's conclusion was sufficiently supported by other grounds and thus would stand absent this statement. Nonetheless, this is an issue which the Commission should address on remand.

Finally, we also call attention to Section 9 of the Act, 43 P.S. §959(g), which provides in pertinent part:

Three or more members of the Commission *or a permanent hearing examiner designated by the Commission* shall constitute the Commission for any hearing required to be held by the Commission under this act. The recommended findings, conclusions and order made by said members or

permanent hearing examiner shall be reviewed and approved or reversed by the Commission before such order may be served upon the parties to the complaint. (Emphasis added.)

We do not mean to suggest that the Commission cannot exercise plenary fact-finding authority with credibility determinations, whether approving or contrary to those made by the Hearing Examiner, but the record should demonstrate whether or not the Hearing Examiner in question is a "permanent" one and that his findings, conclusions and order have been "reviewed and approved or reversed by the Commission."

This case will be remanded.

## ORDER

AND NOW, this 24th day of April, 1989, the order of the Pennsylvania Human Relations Commission dated July 7, 1988, is hereby vacated and this case is remanded to the Commission for proceedings as indicated in the foregoing opinion.