Arleen A. Thompson
**McWILLIAMS, Plaintiff,**

v.

**AT & T INFORMATION SYSTEMS, INC., Defendant.**

**Civ. A. No. 89–747.**

United States District Court,
W.D. Pennsylvania.

Jan. 16, 1990.

Thomas P. Peterson, Springer, Bush &
Perry, Pittsburgh, Pa., for plaintiff.

Alan S. Grodnitzky, Dilworth, Paxson & Kalish, Jon Hogue, Mansmann, Cinderich & Titus, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before the Court in this employment discrimination case are defendant AT & T Information System, Inc.'s April 28, 1989 Motion to Dismiss plaintiff's complaint and plaintiff Arleen A. Thompson McWilliams' May 16, 1989 Motion to Compel Discovery. Jurisdiction in this Court is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. For the reasons set forth below we will deny in part and grant in part defendant's motion and deny plaintiff's motion.

## FACTS

In her complaint plaintiff outlined her employment history with AT & T. She averred that in September 1962, she began employment with an AT & T affiliate as a general clerk and service representative, continuing in that capacity until December 1966. She worked as a service representative for the business unit of Bell of Pennsylvania, another AT & T affiliate, from July 1968 until July 1978, when she was promoted to a management position as a training supervisor. From 1978 through September 1983, Ms. McWilliams assumed several management positions with Bell of Pennsylvania. She became a manager of AT & T's business office in September or October 1983. Ultimately in August 1985, she was appointed manager of the Monaca Phone Center Store.

Plaintiff averred that she experienced physical and nervous exhaustion, necessitating a sick leave beginning May 23, 1986. A psychiatrist diagnosed her condition as severe depression and anxiety.

Plaintiff alleged that approximately one week after she began her sick leave, her immediate superior, Maureen Bucci, insinuating that Ms. McWilliams was feigning illness during an employee strike, requested plaintiff to return to work. On July 28, 1986, Ms. McWilliams attempted unsuccessfully to return to work; on August 12, 1986, she resumed as manager of the phone store on a part-time basis. Plaintiff averred that she returned to a full work day schedule, "fully recovered and released to work by her physician," on August 26, 1986.

Ms. McWilliams claimed that in September 1986, Ms. Bucci created a hostile, abusive and intimidating work environment by scrutinizing and criticizing her work performance, blaming her for inventory problems that occurred during her sick leave, suggesting that she look for another job, and imposing more stringent performance standards on plaintiff than upon other similarly situated managers.

Ms. McWilliams alleged that on December 31, 1986, Ms. Bucci informed plaintiff that she would be assigned the position of Key Product Manager from January 1, 1987 to April 1, 1987 contingent on two conditions: 1) that she would remain in the position if she did a good job and Ms. Bucci decided to retain the position; and 2) that if the position were abolished, she would be declared surplus and entitled to AT & T's standard severance payment as a surplus manager.

Ms. McWilliams averred that after she assumed the position of Key Product Manager, Ms. Bucci continued to harass her by placing her on probation without notice, verbally berating her in the presence of co-workers, criticizing her sales ability, threatening her with discharge because of inferior work and giving her a poor performance evaluation despite her place among the top 40% of managers in her region and her achievement of 106% of her sales objectives during 1986. In addition, Ms. McWilliams claimed that defendant imposed sales objectives on her that were significantly higher than those established for any other Key Product Manager, denied her access to the Zone secretary and provided her with business cards denoting her a "Key Product Specialist" rather than a "Key Product Manager."

In May 1987, Ms. Bucci allegedly informed Ms. McWilliams that she could either resign or accept reduced employment as a Sales Associate. On May 22, 1987,

defendant dismissed plaintiff. In her complaint plaintiff averred that she was denied termination benefits and other payments to which she was entitled.

On July 23, 1987, plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), alleging that defendant had discharged her in violation of Section 5(a) of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.Stat.Ann. § 955(a). On November 29, 1988, the PHRC issued a right-to-sue letter. Thereafter, Ms. McWilliams filed a complaint in the Court of Common Pleas of Allegheny County, setting forth the following causes of action: 1) violation of Section 5(a) of the PHRA; 2) wrongful discharge; 3) intentional infliction of emotional distress; and 4) breach of contract. On April 12, 1989, defendant removed the case to this Court.

## DISCUSSION

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must consider the well pleaded allegations in the complaint to be true and view the complaint liberally in favor of the plaintiff. In addition, the Court should give the plaintiff the benefit of all inferences fairly deducible from the averred facts. *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir.1989); *Columbia Pictures Industries, Inc. v. Redd Horne, Inc.*, 568 F.Supp. 494, 501 (W.D.Pa.1983), *aff'd*, 749 F.2d 154 (3d Cir.1984).

### I. The Motion to Dismiss

a. Violation of Section 5 of the PHRA

In Count 1 of her complaint, Ms. McWilliams alleged that the severe depression and anxiety from which she suffered from May through August 1986 constitute a handicap under Section 5 of the PHRA and that defendant regarded her as suffering from such a handicap. She averred that her excellent employment record demonstrates that she is qualified for the positions she held at AT & T and that her handicap was not job-related. Furthermore, she alleged that, as a result of her handicap, defendant harassed, attempted to demote, discharged and otherwise discriminated against her, thus violating the PHRA. In her plea for relief, plaintiff requested the Court to enjoin defendant from unlawfully discriminating against her based on her handicap and to order reinstatement, backpay and compensation for lost fringe benefits, plus punitive damages and attorney's fees.

Section 5 of the PHRA provides in relevant part that:

> It shall be an unlawful discriminatory practice ...
> (a) For any employer because of ... [a] non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

43 Pa.Stat.Ann. § 955.

Both parties agree that the Pennsylvania Code applies the following definition of a handicapped person to the PHRA:

> *Handicapped or disabled person*—Includes the following:
> (i) A person who:
> (A) has a physical or mental impairment which substantially limits one or more major life activities;
> (B) has a record of such impairment; or
> (C) is regarded as having such an impairment.

16 Pa.Code § 44.4(i).

Additionally, Section 44.4(ii) provides the following definitions which pertain to this case:

> (1) "mental impairment" includes mental illness;
> (2) "major life activities" includes working;
> (3) "has a record of such an impairment" includes a history of or a classification as a mental impairment that substantially limits one or more major life activities
> (4) "is regarded as having an impairment" means that although the impairment does not substantially limit major

life activities, it is treated by an employer as constituting such a limitation or it means that the impairment limits major life activities only as a result of the attitudes of others toward such impairment. *See* 16 Pa.Code § 44.4(ii).

The definition of a "handicapped or disabled person" is adopted from the United States Department of Health, Education and Welfare's ("HEW") regulations interpreting the Federal Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701–796i. These regulations, "drafted with the oversight and approval of Congress," significantly assist a determination of whether a particular individual is handicapped. *School Board of Nassau County v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 1126–1127, 94 L.Ed.2d 307 (1987). Both parties here acknowledge that the Pennsylvania legislature through the Pennsylvania Code has adopted the HEW regulations verbatim. Cases interpreting the federal act therefore are equally valid for determining the definition of a handicapped individual under the PHRA. *See City of Philadelphia v. Pennsylvania Human Relations Commission,* 7 Pa.Cmwlth. 500, 300 A.2d 97 (1973).

■ Our task is to examine the statutory language to determine if plaintiff has alleged facts sufficient to show that she is "handicapped" within the meaning of the PHRA. Defendant disputes that plaintiff has successfully alleged that as a mental illness, her depression and anxiety constitute a mental impairment. Because plaintiff averred that she was "fully recovered and released to work by her physician" within three months, defendant asserts that plaintiff's mental disability cannot rise to the level of a handicap under any reasonable application of that term.

We cannot determine the extent of Ms. McWilliams mental impairment based on the pleadings before the Court on this motion to dismiss. However, in Paragraph 12 of her Complaint, plaintiff alleged that she experienced physical and nervous exhaustion and *was diagnosed by a psychiatrist* as suffering from severe depression and anxiety. (Emphasis added.) Considering these allegations in the light most favorable to plaintiff, we determine at this stage in the litigation that her depression and anxiety constitute a mental impairment. *See Doe v. Region 13 Mental Health–Mental Retardation Commission,* 704 F.2d 1402, 1408 n. 6 (5th Cir.1983) (initial jurisdictional burden of alleging a handicap is met by presentation of a "colorable claim" of mental impairment).

Plaintiff asserts and defendant denies that plaintiff has established "a record" of her handicap under 16 Pa.Code § 44.4(i)(B). The Court questions whether Ms. McWilliams has alleged "a record" of a mental impairment that has "substantially limited" a major life activity, that is, her ability to work.

Cases illustrating a "record" of an impairment have tended to show the existence of a handicap over a longer period of time than in the present case. In *Doe,* anxiety, insomnia and depression from 1977 to the date of termination in 1979 constituted an unquestioned handicap. *Doe,* 704 F.2d at 1408.

In *Gardner v. Morris,* 752 F.2d 1271 (8th Cir.1985), the plaintiff, diagnosed as manic depressive in 1973, suffered an episode in 1977 which resulted in hospitalization in a mental facility. When his request for a change of station to Saudi Arabia was denied in 1978, plaintiff filed discrimination charges. The case, while analyzing other applications of the Federal Rehabilitation Act, did not dispute the existence of a handicap based on plaintiff's manic depression.

Defendant refers us to *Evans v. City of Dallas,* 861 F.2d 846 (5th Cir.1988), in which the Court of Appeals agreed with the district court's determination that the plaintiff was not handicapped within the meaning of the Federal Rehabilitation Act. Plaintiff had alleged as a reason for his discharge excessive absenteeism resulting from a knee injury that had required surgery. The district court stated that although the injury may have incapacitated plaintiff during his recuperation, the limitation did not continue, nor had plaintiff alleged that others regarded him as having a

continuing impairment. The court concluded that even though plaintiff may have had a limited record of such an impairment, the statute contemplated an impairment of a continuing nature. *Id.* at 853 (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 405–06, 99 S.Ct. 2361, 2366–67, 60 L.Ed.2d 980 (1979)). Plaintiff here asserts that her anxiety and depression were of short duration and that she was fully recovered when she returned to work. Thus, her record of an impairment, like that in *Evans*, does not show a continuing handicap.

This Court also questions whether plaintiff has alleged substantial limitations in her ability to work. In Paragraph 20a of her Complaint, plaintiff alleged that in giving her a poor work evaluation, Ms. Bucci disregarded that in 1986, plaintiff had achieved 106% of her objectives, performing among the top 40% of store managers in the Northeast Region. In Paragraph 20e, Ms. McWilliams stated that the quality of her sales abilities was unjustly criticized. In fact, plaintiff has alleged that she performed adequately and well and that any deficiency resulted from defendant's unreasonable demands that exceeded requirements for other similarly situated employees. Complaint at ¶ 21a.

We find, however, that this Court need not determine whether Ms. McWilliams has adequately alleged a record of impairment or a substantial limitation in her ability to work. Instead, we are impressed that she has sufficiently claimed a violation of the PHRA by alleging facts to support an inference that defendant regarded her as having an impairment under 16 Pa.Code § 44.4(i)(C). The language of the Code is disjunctive. Therefore, plaintiff may meet the jurisdictional burden merely by alleging facts tending to show that she is regarded as a person with a handicap that substantially limits her work.

In her complaint, plaintiff alleged that Ms. Bucci implied that Ms. McWilliams was taking too long to return to work and that "she was feigning her illness." Complaint at ¶ 14. Plaintiff alleged that on her return to work, because Ms. Bucci exerted undue pressure, plaintiff was unable to remain at work. *Id.* at ¶ 15. Plaintiff averred, among other things, that Ms. Bucci created a hostile, abusive and intimidating work environment by criticizing her work performance, blaming her for problems that arose during her absence, accusing her of failing to correct those problems, and unjustly scrutinizing her work more closely than she had before Ms. McWilliams' sick leave. *Id.* at ¶ 17. Moreover, defendant placed plaintiff on probation without informing her of it, verbally berated plaintiff in front of co-workers, and unjustly threatened plaintiff with demotion or discharge. *Id.* at ¶ 20.

Congress amended its definition of a handicapped person to reflect its "concern with protecting the handicapped against discrimination stemming not only from simple prejudice, but from 'archaic attitudes and laws' and from 'the fact that the American people are simply unfamiliar with and insensitive to the difficulties confront[ing] individuals with handicaps.'" *School Board of Nassau County v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987).

We are concerned that in this case, defendant's possibly archaic attitudes toward, and prejudice against, a person with a mental impairment may have caused defendant to regard plaintiff as continuing to have an impairment even after she had asserted she did not. Congress had foreseen such a possibility when it expanded the definition of a handicapped person to include those who may be regarded as having an impairment but who, at present, have no actual incapacity. *Id.* (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 405–06 n. 6, 99 S.Ct. 2361, 2366–67 n. 6, 60 L.Ed.2d 980 (1979)).

Our own practical experience assures us that if Ms. Bucci, speaking for defendant, holds such prejudices, she is not likely to have spoken them in terms that Ms. McWilliams could specifically allege. Thus, defendant's argument that plaintiff did not claim that Ms. Bucci ever said anything about plaintiff being handicapped or perceived as handicapped is unavailing.

Based on the above analysis, we conclude that, at this stage of the litigation, Ms. McWilliams may maintain her suit based on the possible application of the definition in 16 Pa.Code 44.4(i)(C) as a violation of the PHRA.

b. Wrongful Discharge

■ Defendant asserts that to the extent Ms. McWilliams' wrongful discharge claim is also premised on her claim of handicap discrimination, this Court must dismiss the wrongful discharge claim. We must first decide whether the PHRA provides the exclusive remedy for a tort action for wrongful discharge based on discrimination.

In *Householder v. Kensington Mfg. Co.*, 360 Pa.Super. 290, 294, 520 A.2d 461, 464 (1987), the Pennsylvania Superior Court stated that "the PHRA preempts a tort action for wrongful discharge based upon discrimination." The Superior Court cited *Sola v. Lafayette College*, 804 F.2d 40 (3d Cir.1986) for that proposition. However, in *Sola*, the Court of Appeals for the Third Circuit stated merely that the plaintiff did not challenge the district court's decision that a wrongful discharge action based on gender discrimination is preempted by the PHRA. *Id.* at 42.

Although the Court of Appeals did not address the matter directly, in a footnote the court cited the following language from 43 Pa.Stat.Ann. § 962(b):

> as to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned.

*See Sola*, 804 F.2d at 42 n. 2.

In *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 436 (3d Cir.1986), the Court of Appeals observed that recognition of a common law action for the same claims that should be raised under the PHRA would allow claimants to circumvent carefully drafted legislative procedures. The court stated that Pennsylvania courts will not recognize a common law cause of action when a statute provides a legal remedy for the employee discharge. The court

cited *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910 (3d Cir.1982), which precluded a tort claim premised on discrimination against the handicapped.

Recently, in *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 918 (1989), the Supreme Court of Pennsylvania upheld the result in *Householder*, when it stated that "the PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination." Thus, Pennsylvania law as well as the law of this Circuit supports our conclusion that plaintiff may pursue her wrongful discharge based on discrimination only under the PHRA.

To the extent plaintiff may have alleged a common law cause of action with respect to wrongful discharge for which the PHRA does not provide a remedy, we will address that claim.

■ Plaintiff has alleged that her discharge was based on defendant's specific intent to harm her because she did not report to work during a strike. Complaint at ¶ 34. Plaintiff further alleged that "the specific intent to harm her constitutes a violation of public policy." *Id.* at ¶ 35.

Defendant in its brief in support of the motion to dismiss appropriately discussed the Pennsylvania employment-at-will doctrine and its public policy exception as it has been developed in *Geary v. United States Steel*, 456 Pa. 171, 319 A.2d 174 (1974) and its progeny. In her brief, plaintiff countered that she had "not alleged a violation of public policy, except to the extent that a discharge made with specific intent to harm the employee is, itself, a violation of public policy." Plaintiff's brief at 15.

Although plaintiff seemingly asserts that the specific intent to harm issue is intertwined with the public policy issue, based on *Geary* the Court views the two issues as separable. Perhaps we can reduce confusion by explaining *Geary* itself.

Geary, an at-will employee, was discharged because he repeatedly disputed the safety of a company product. He filed suit

for compensatory and punitive damages, asserting that the company's conduct was "wrongful, malicious and abusive." *Id.* 319 A.2d at 175. Geary relied in part on a theory of specific intent to harm, which the court denominated a theory "on the frontier of the law of tort." *Id.* at 177.

The court distinguished specific intent from general intent to harm, stating that general intent was insufficient because the employer's privilege to discharge would be "effectively eradicated" if an employee need only show that an employer knew or should have known the probable consequences of his act. *Id.*

The court in *Geary* compared that case to another in which the complaint alleged that the defendant had acted "intentionally, maliciously, fraudulently, deceitfully and without justification." The Court determined that the pleading did not satisfy a specific intent requirement. Although the details are unimportant for our analysis, Geary's complaint was deemed even more deficient. The court stated: "There is nothing here from which we could infer that the company fired Geary for the specific purpose of causing him harm, or coercing him to break any law or otherwise to compromise himself." *Id.* at 178.

Finding that Geary had failed to state a claim upon which relief could be granted, the court concluded its discussion of the specific intent to harm theory and proceeded with an analysis of the public policy exception. For our purposes, it is crucial to note that the Pennsylvania Supreme Court did not, by this case, adopt as an exception to the employee-at-will doctrine the "specific intent to harm" theory. As support for our conclusion, we point to the rule in *Geary:* "We hold *only* that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Id.* at 180 (emphasis added).

Plaintiff refers us to *Tourville v. Inter-Ocean Ins. Co.,* 353 Pa.Super. 53, 508 A.2d 1263 (1986), for further elucidation of the specific intent to harm theory. In that case, the Pennsylvania Superior Court suggested a framework of phrases for analyzing the theory. The first phrase was "disinterested malevolence."

By "disinterested malevolence" the court meant that no proper interest was involved in the act of discharge, that is, "that there was no reason for the action (other than the atavistic desire to hurt another)." The appellate court suggested that the trial court examine the pleadings to test the legal sufficiency of the case. Only if a cause "which in every day, civilized life would serve as a basis for the action" did not exist, could the specific intent to harm theory be upheld under a "disinterested malevolence" banner.

Even accepting that Pennsylvania may recognize the specific intent to harm cause of action, *see Engstrom v. John Nuveen & Co.,* 668 F.Supp. 953, 958 (E.D.Pa.1987), we find that plaintiff here cannot survive a motion to dismiss based on disinterested malevolence. Plaintiff alleged that she was given a poor work performance evaluation. Complaint at ¶ 21. Plaintiff also averred that she had failed to meet her sales objectives. *Id.* at ¶ 23. Thus, plaintiff has stated two reasons which would form an adequate basis for dismissal.

The second phrase utilized by the Superior Court was "ulterior purpose": that the act, although done with sufficient reason, was done with an ulterior motive to harm the other party. We agree with plaintiff that only the surrounding circumstances will reveal whether an ulterior purpose existed. *Tourville* perplexes us, however, because the court, rather than describing a sufficient pleading, merely asked itself questions which it failed to answer.

Even bound as we are in this diversity case by Pennsylvania law, we are not persuaded that the Superior Court in *Tourville* has broadened *Geary* clearly enough to establish a cause of action for Ms. McWilliams under the specific intent to harm theory. *Contra Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super. 560, 573 n. 5, 422 A.2d 611, 618 n. 5 (1980) (suggesting *Geary* proscription of discharge motivated by spe-

cific intent to harm as an example of public policy violation.) We rely instead on the Pennsylvania Supreme Court's surviving clear precedent in *Geary* that permits only a public policy exception to the at-will doctrine. *See Murray v. Commercial Union Ins. Co.*, 782 F.2d 432 (3d Cir.1986) (federal courts sitting in diversity exercise caution in recognition of emerging Pennsylvania common law actions for wrongful discharge).

Plaintiff has conceded that, except as it involves a specific intent to harm theory, she does not raise a public policy issue. Because, in light of her allegations, we cannot recognize her theory of recovery as viable in Pennsylvania, Count II of Ms. McWilliams' Complaint will be dismissed with prejudice for failure to state a claim.

c. Intentional Infliction of Emotional Distress

We address plaintiff's claim for intentional infliction of emotional distress in two ways: 1) whether Pennsylvania recognizes such a cause of action and 2) whether, if it does, plaintiff has sufficiently pleaded this tort.

To determine if Pennsylvania recognizes intentional infliction of emotional distress, we need not analyze the leading Pennsylvania case, *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987). Instead, we are bound by a recent decision of the Court of Appeals for the Third Circuit in *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir.1989).

In *Clark*, the Court of Appeals upheld their predictions in *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) and in *Williams v. Gruzzardi*, 875 F.2d 46 (3d Cir.1989), that Pennsylvania eventually would adopt the evolving tort of intentional infliction of emotional distress, as articulated in section 46 of the Restatement (Second) of Torts. The Court noted that in *Kazatsky*, the Pennsylvania Supreme Court expressed reservations about the viability of section 46; however, the court specified evidence necessary to prove the tort. *Clark*, 890 F.2d at 623 (citation omitted). We therefore follow the instruction of the Court of Appeals in

*Clark* to look to cases applying Pennsylvania law to determine what constitutes the intentional infliction of emotional distress. *Id.*

It is "extremely rare" in the employment context to find conduct that will prove sufficiently outrageous—that is, so extreme in degree as to go beyond all possible bounds of decency—to permit recovery for the tort of intentional infliction of emotional distress. *See id.*, at 623.

A court has found conduct outrageous where an employer engaged in both sexual harassment and other retaliatory behavior. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) (citation omitted). In *Cox*, the plaintiff did not make out a case for intentional infliction of emotional distress when his employer fired him one day after he returned to work after by-pass surgery, regardless that his recuperation was incomplete, his benefits were jeopardized and his chances were limited for obtaining alternative employment.

Even a premeditated plan to force an employee to resign by exerting difficult employment conditions does not rise to the level of intentional infliction of emotional distress. *Madreperla v. Williard Co.*, 606 F.Supp. 874, 880 (E.D.Pa.1985).

*Madreperla* presents a situation similar to that of the present case. Ms. McWilliams has alleged that Ms. Bucci intimidated her, criticized and scrutinized her work, imposed unreasonable objectives and threatened to demote or discharge her. Although these allegations do not present a picture of fairness, plaintiff has not alleged facts which, even if true, are sufficient to show the egregious behavior that would support her intentional infliction of emotional distress claim. We therefore will dismiss with prejudice Count III of the complaint.

d. Breach of Contract

In Pennsylvania, a contract of employment which does not specify a definite duration of employment is presumed to be terminable at the will of either party. *Monkelis v. Scientific Systems Services, Inc.*, 677 F.Supp. 378, 381 (W.D.Pa.1988)

(Cohill, C.J.). The party asserting breach of an employment contract bears the burden to overcome the presumption by producing evidence of facts and circumstances establishing tenure. *Id.* Recent Pennsylvania decisions have noted that further erosion of the at-will presumption in Pennsylvania should be effected by the legislature and not by the courts. *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 95, 545 A.2d 334, 336 (1988). Therefore, except in rare instances, discharges will not be reviewed in a judicial forum. *Id.*

In the context of a motion to dismiss, we must determine if plaintiff has alleged a contract for a definite term or facts from which such a contract could be inferred. Ms. McWilliams alleged the following in paragraph 18 of her complaint:

> Ms. Bucci informed Mrs. McWilliams that she would be transferred to the position of Key Product Manager for the period January 1, 1987 to April 1, 1987 and promised her that, *if* she did a good job in such position and met her objectives, *and if* Ms. Bucci decided to retain such position, Mrs. McWilliams would remain in such position, *or, if* such position were abolished, she would be declared surplus and entitled to payment as a surplus manager.

(Emphasis added.)

Plaintiff alleged that the sales objectives were unreasonably high and unrealistic. Complaint at ¶ 23. Plaintiff also alleged that in May 1987, Ms. Bucci informed her that she had failed to achieve those objectives, and accordingly, could either resign or accept a position as a sales associate. After she refused to accept the sales associate position, defendant dismissed plaintiff on May 22, 1987.

Under Count IV of her Complaint, plaintiff incorporated paragraph 18 by reference and added the following:

> Ms. Bucci's promise to Mrs. McWilliams that, if she did a good job as a Key Product Manager and would meet her objectives, Mrs. McWilliams could remain in that job title or, if that job title were abolished, she would be declared surplus and entitled to payment as a surplus

manager, constitutes a contract between Defendant AT & T and Mrs. McWilliams. Complaint at ¶ 40.

Plaintiff also averred that she had performed satisfactorily and "endeavored to accomplish the unreasonable and burdensome objectives which had been set for her." Complaint at ¶ 41.

Initially, we observe that defendant promised plaintiff employment as a Key Product Manager for a definite period of time from January through April 1987. Defendant honored that commitment, retaining plaintiff in that position until May 1987. We therefore address only whether plaintiff has alleged a contract for employment thereafter.

■ An intention to offer a specific term of employment may not be inferred from an employer's written or oral statement that the employee would not be terminated so long as she performed her work in a satisfactory manner. *See Betts v. Stroehmann Bros.,* 355 Pa.Super. 195, 198, 512 A.2d 1280, 1281 (1986) (upholding demurrer in employment at-will case.) Unless an employee furnishes consideration in addition to her mere services, she is an employee at-will, whose employment may be terminated at any time for any reason. *Id.* Plaintiff here has not alleged any promise of employment for a specific term beyond April 1987, nor has she alleged any consideration beyond her services.

■ In addition to the existence of an express contract or additional consideration, the presumption of at-will employment may be overcome by evidence of an implied contract, that is, by circumstances surrounding the hiring that indicate the parties did not intend the employment to be at-will. *Scott,* 545 A.2d at 336. *Contra Engstrom v. John Nuveen & Co., Inc.,* 668 F.Supp. 953 (E.D.Pa.1987) (no cause of action for breach of an implied employment contract under Pennsylvania law.) Evidence that the employer offered "a permanent job," "life-long employment," or work on a "long term project" is insufficient. *Scott,* 545 A.2d at 337. Assurances of employment for "as long as I wanted and

they wanted me and I was satisfactory to them" are too vague to create employment for a term. *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 435 (3d Cir. 1986).

■ Plaintiff submits that defendant offered her an express contract of employment through Ms. Bucci's promise that if Ms. McWilliams did a good job and met her objectives, she would remain in the position of Key Product Manager, or, if such position were abolished, plaintiff would be declared surplus. Plaintiff suggests in a footnote to her brief that if this oral promise were reduced to a written memorandum, the Court may deem it an express contract. Plaintiff's brief at 29 n. 4. We look more to the terms than to the form. The Court finds that the terms of this purported express contract are too vague to overcome the at-will presumption.

■ In the alternative, plaintiff asserts that this promise constitutes an implied promise of employment. Again, we find that based on the complaint, which establishes conditions precedent to her continued employment, plaintiff has not established that defendant implied a contract. Ms. McWilliams did not aver that she in fact met defendant's sales objectives. She alleged that Ms. Bucci would decide whether to retain the Key Product Manager's Position. Complaint ¶ at 18. Furthermore, plaintiff alleged that the Key Product Manager's position was "newly-created," permitting an inference that the position was experimental. *Id.* at ¶ 19. This inference is supported by plaintiff's allegation that the position could be abolished. *Id.* at ¶ 18. Thus, under the established case law plaintiff has not pointed to facts and circumstances that permit us to infer that defendant implied a contract.

We must be cautious on a motion to dismiss. If we believed that plaintiff could amend her complaint to allege facts necessary to show an exception to the at-will doctrine, we would permit her to do so. However, in this case we believe that the facts alleged have excluded the breach of contract action; and therefore, we will dismiss with prejudice Count IV for failure to state a claim on which relief may be granted.

## II. The Motion to Compel

Plaintiff has filed a motion to compel discovery and for an "award of expenses of motion." We find some procedural confusion attending this motion which we will attempt to remedy. Plaintiff initially filed her action in the Court of Common Pleas of Allegheny County. Because we do not have docket information from that court to verify dates of various filings, we will attempt to set forth the sequence of events based on the parties' representations.

Plaintiff asserts in her brief that she filed her complaint in the Court of Common Pleas on March 3, 1989. Defendant reports the filing as having occurred on March 8, 1989; however, defendant asserts that it was not served with the complaint until about March 20, 1989. Four days before the complaint was served on defendant, on March 16, 1989, plaintiff served upon defendant a "First Set of Interrogatories Directed to Defendant" and "Plaintiff's First Request for Production of Documents." Defendant's brief in opposition to the motion to compel at 2. Plaintiff disputes this statement; she argues that, although the discovery requests were dated March 16, 1989, they were served contemporaneously with the complaint on March 20, 1989.

We have no record of these docket entries because the first entry in the district court docket did not occur until April 12, 1989, when defendant filed a petition for removal. Further, we observe that, despite our procedure for filing a notice of discovery requests in this Court, we have no docket entries, nor any papers in our case file, indicating that interrogatories or other discovery requests have been served on any party. We also note that no orders scheduling discovery have been entered in this Court.

We have lost patience with counsels' voluminous submissions on this issue, particularly in light of defendant's assertion that no substantive discussions were held pursuant to Local Rule of Civil Procedure 4(a).

Defendant has stated that the only discussions which took place involved time extensions. Plaintiff argues that, although she offered an extension for discovery, defendant insisted on a stay of discovery, maintaining that discovery was premature.

We observe that the purpose of Rule 4(a), like similar rules in virtually all of our federal district courts, is to reduce the burden on the court and the expense to the parties caused by counsel's expectations that the Court would referee discovery skirmishes. *See Crown Cork & Seal Co. v. Chemed Corp.*, 101 F.R.D. 105, 106 (E.D. Pa.1984). Because we foresee a possibility of further disagreements as this case moves along and because discovery disputes are an anathema to us, we warn counsel to take Rule 4(a) seriously.

In light of our discussion on the motion to dismiss, we will deny the motion to compel. We have determined that Count I comprises plaintiff's viable cause of action. We have also determined that based on the alleged facts taken in the light most favorable to plaintiff, she has not stated legally cognizable claims under Counts II, III and IV. Again, we observe that the facts alleged that are within plaintiff's own personal knowledge have excluded her causes of action. We therefore believe that discovering additional facts within defendant's sole control would not further plaintiff's case on the three dismissed counts. To compel discovery under these circumstances would ill serve efficiency or economy.

This Court has broad discretion to impose sanctions. 8 C. Wright and A. Miller, *Federal Practice and Procedure*, § 2284. We will not award expenses on this motion for either party.

An appropriate ORDER will issue.

### ORDER

AND NOW, to-wit, this 16th day of January, 1990, it is ORDERED, ADJUDGED and DECREED that:

1) Defendant's motion to dismiss, as to Count I, be and hereby is DENIED;

2) Defendant's motion to dismiss with prejudice, as to Counts II, III and IV be and hereby is GRANTED;

3) Plaintiff's motion to compel and for an award of expenses of motion be and hereby is DENIED.